DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, John Watkins and Felicia Ball, appeal from their convictions in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On July 29, 2005, Jason Sulzener ("Sulzener"), who was at that time employed as an Ohio State Highway Patrol Trooper, observed a motorcycle traveling at a high rate of speed onto State Route 8. It was approximately 3:00 a.m. There was a female passenger on the motorcycle, but Sulzener could not identify the driver as male or female. Sulzener accelerated to catch up with the motorcycle, which he estimated was traveling at 124 miles per hour. Sulzener attempted a traffic stop by activating the cruiser's lights, including the top red and blue light bar. The motorcycle then sped up and Sulzener determined that for safety purposes it was best not to pursue the motorcycle. Sulzener was unable to identify the driver, but was able to identify the motorcycle as a blue sports bike. He was also unable to clearly view the license plate. After the motorcycle sped off, Sulzener deactivated his lights and pulled over to do some paperwork. He then realized he needed gas. As he traveled southbound on Route 8, he observed a light from the headlight of what appeared to be a motorcycle lying in a ditch on the side of the highway. Observing what he believed to be a motorcycle crash, Sulzener immediately called for an ambulance. When he approached the vehicle, he observed two individuals, Appellant Watkins and Appellant Ball. At this point, the facts are in dispute. The State, through Sulzener, contends that the motorcycle in the ditch was the same one Sulzener saw speeding southbound on Route 8. The State contends that when asked if he was hurt, Appellant Watkins ran away from Sulzener. A chase ensued. Sulzener was eventually able to catch Appellant Watkins, who kicked and fought him. As Sulzener regained control of Appellant Watkins, he saw Appellant Ball approach his cruiser, which he had left running with the keys in the ignition and the doors unlocked. Appellant Ball entered the vehicle and drove it down the highway. Sulzener handcuffed Appellant Watkins and used his cell phone to call for help. Appellant Watkins again attempted to kick and run away from Sulzener. Eventually, other troopers were able to locate Sulzener and take over the scene. Appellant Watkins had a burn mark on his leg and smelled of alcohol. He was taken to the hospital, then to the Barberton Police Department where he was booked.
 {¶ 3} During the struggle with Appellant Watkins, Appellant Ball drove Sulzener's cruiser approximately an eighth of a mile down the highway, pulled over and threw the keys into the grass. She was found near the vehicle and brought back to the scene where Sulzener and Appellant Watkins were located. She initially denied taking the vehicle, although she admitted later that evening that she was the one who drove off in the vehicle. Appellant Ball also smelled of alcohol, but refused to take any of the tests offered to her to determine her alcohol concentration level.
 {¶ 4} On August 16, 2005, Appellant Watkins was indicted on the following counts: (1) one count of assault on a peace officer, in violation of R.C. 2903.13(A), (2) one count of operating under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), (3) one count of driving under suspension, in violation of R.C. 4510.11, (4) one count of speeding, in violation R.C. 4511.21, and (5) one count of resisting arrest, in violation of R.C. 2921.33(A). On September 28, 2005, a supplemental indictment was filed, charging Appellant Watkins with one count of failure to comply with an officer, in violation of R.C. 2921.331(B) and one count of resisting arrest, in violation of R.C.2921.33(B). On December 7, 2005, another supplemental indictment was filed, charging Appellant Watkins with one count of tampering with the evidence, in violation of 2921.12(A)(1). Appellant Watkins pled not guilty to these charges.
 {¶ 5} Appellant Ball was also indicted on August 16, 2005 on one count of grand theft, in violation of R.C. 2913.02(A)(1), and one count of operating under the influence of alcohol, in violation of R.C.4511.19(A). On September 28, 2005, Appellant Ball was further charged with one count of tampering with evidence, in violation of 2921.12(A)(1), one count of unauthorized use of a vehicle, in violation of 2913.03(A), and one count of obstructing official business, in violation of 2921.31(B). She also pled not guilty to all charges.
 {¶ 6} On January 23, 2006, Appellants were tried jointly before a jury. At the close of the State's case and at the close of all evidence, Appellants each moved for a Crim.R. 29(A) motion for acquittal. Appellant Watkins specifically urged acquittal as to the tampering with the evidence charge and the failure to comply charge. The trial court denied his motion as to the failure to comply charge and took the tampering charge under advisement. At the close of all evidence, the trial court dismissed the tampering charge. Appellant Ball specifically urged acquittal as to the driving under the influence charge, the obstruction of official business charge, the grand theft charge, and the tampering with the evidence charge. The trial court granted her motion as to the obstruction charged, and denied it as to all other charges.
 {¶ 7} Appellant Watkins was convicted of failure to comply, assault, driving under the influence, resisting arrest, driving under suspension and speeding. He was sentenced to a total of 18 months in prison. Appellant Ball was convicted of unauthorized use of a motor vehicle, grand theft, and driving under the influence. She was sentenced to 30 days in prison and 18 months of community control. Appellants timely appealed their convictions and on motion by the State, the two separate appeals were consolidated because they presented similar issues and involved two defendants who were tried jointly. Appellant Watkins cites three assignments of error and Appellant Ball cites two. We have combined and rearranged Appellants' assigned errors to facilitate our review.
 II. WATKINS' ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROCEEDINGS TO GO FORWARD IN THE FACE OF IMPROPER JURY CONDUCT."
 BALL'S ASSIGNMENT OF ERROR II
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROCEEDINGS TO GO FORWARD IN THE FACE OF IMPROPER JURY CONDUCT."
 {¶ 8} Appellants Watkins and Ball argue that the trial court committed reversible error when it allowed the proceedings to go forward in the face of improper jury conduct. Specifically, they argue they were denied a fair trial after the trial court stopped the trial to wake a sleeping juror, but failed to dismiss the juror or declare a mistrial. We disagree.
 "It is well established that [t]he trial judge is in the best position to determine the nature of the alleged jury misconduct and the appropriate remedies for any demonstrated misconduct. Moreover, a trial court has considerable discretion in deciding how to handle a sleeping juror." (Internal citations and quotations omitted) State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 184.
 {¶ 9} The Ohio Supreme Court has found, as here, that where the defense did not expressly request the alleged juror misconduct to be remedied at trial or express some form of dissatisfaction with the way the trial court handled the matter, in the absence of plain error, the claim is waived. Id. at ¶ 185, citing State v. Childs (1968),14 Ohio St.2d 56, paragraph three of the syllabus.
 {¶ 10} Pursuant to Crim.R. 52(B) "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error `is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Keener, 11th Dist. No 2005-L-182, 2006-Ohio-5650, at ¶ 19, quoting State v. Long (1978),53 Ohio St.2d 91, 97. As such, "[p]lain error exists only where the results of the trial court would have been different without the alleged error."Keener, at ¶ 19.
 {¶ 11} At trial, the following exchange occurred during the direct examination of former Trooper Sulzener:
 "THE COURT: Hold on a second. Mrs. Johnson, I need you to stay with us. I know it's warm. Can I get you some water?
 "MS. JOHNSON: I have some.
 "THE COURT: Okay. All right. Keep going."
 {¶ 12} We find no plain error. As stated above, a trial court has considerable discretion in determining how to handle a sleeping juror. See McKnight, 107 Ohio St.3d at ¶ 184. Here, "[t]here is no evidence that the juror missed large or critical portions of the trial. * * * Moreover, the trial judge was watching the situation, and [she] admonished the jury to be alert." State v. Sanders (2001),92 Ohio St.3d 245, 253. Without more evidence, i.e., that the juror was actually sleeping and for how long, we cannot say the trial court's failure to remove the juror constituted plain error. Appellant Watkins' first assignment of error and Appellant Ball's second assignment of error are without merit. See State v. McConkey, 11th Dist. No. 2004-A-0017,2005-Ohio-6580.
 WATKINS' ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT WATKINS' MOTION FIR [SIC] JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."
 BALL'S ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR WHEN IT DENIED APPELLANT BALLS' [SIC] MOTION FOR JUDGMENT OF ACCQUITAL [SIC] UNDER CRIMINAL RULE 29[.]"
 {¶ 13} Appellants argue that the trial court committed reversible error when it denied their Crim.R. 29 motion for acquittal. Specifically, Appellants argue that their convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 14} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, syllabus at one. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 15} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 16} Therefore, we will address Appellants' claims that their convictions were against the manifest weight of the evidence first, as it is dispositive of Appellants' claims of insufficiency.
 {¶ 17} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 18} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Appellant Watkins
 {¶ 19} In support of his contentions that the evidence in this case was insufficient and against the manifest weight of the evidence, Appellant Watkins states that the evidence presented revealed that he did not flee or elude the police. However, Appellant Watkins does not point this Court to any specific evidence in the record to support this contention. "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. See also, App. R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. This Court may disregard arguments if an appellant fails to identify the relevant portions of the record upon which the errors are based. See App.R. 12(A)(2). See also,Smith v. Akron Dept. of Public Health, 9th Dist. No. 21103, 2003-Ohio-93. Appellant Watkins bears the burden of affirmatively demonstrating the error on appeal, and substantiating his arguments in support. Angle v. Western Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at *1; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at *2. See also, App.R. 16(A)(7). As Appellant Watkins' argument fails to comply with the foregoing appellate rule requirements, he has failed to meet his burden on appeal. We are unable to conclude that the trial court erred and we find that Appellant Watkins' second assignment of error is without merit.
Appellant Ball
 {¶ 20} In support of her contention that the trial court erred in denying her Crim.R. 29 motion, Appellant Ball argues that the evidence presented at trial was insufficient to support the finding that she purposefully deprived the State of its property under R.C. 2913.02. Appellant Ball also argues that if we find the evidence was sufficient to submit the charge to the jury, then the jury clearly lost its way, resulting in a manifest miscarriage of justice. We do not agree that there was insufficient evidence or that the conviction is against the weight of the evidence.
 {¶ 21} In the instant case, Appellant Ball does not deny that she took Sulzener's patrol car. She testified that she took the vehicle, drove it a short distance down the road, then threw the keys in a ditch on the side of the road. She testified that she threw the keys because she "realized what I [had] just done was stupid." And that she wanted to "get rid of whatever evidence [I had] and that's what I was thinking." She further testified that when approached by another patrol officer, she lied to him about taking the patrol car. Appellant Ball testified that she took the patrol car because she was afraid of Sulzener because he "charged us, aggressively[,]" and that she wanted to get away from the situation. She further testified that she did not tell the officers where she had thrown the keys, nor did she have permission from anyone to use the car. On redirect examination, Appellant Ball testified that the only reason she took the car was to get away from what she perceived to be a dangerous situation.
 {¶ 22} Sulzener testified that when he approached Appellants he saw them both lying in the ditch near the motorcycle and he asked them if they were hurt. He testified that he approached Appellant Watkins and asked him again if he was hurt. Sulzener testified that at this point, Appellant Watkins got up and ran from him. He testified that during the ensuing struggle, he could hear Appellant Ball yelling at him to leave Appellant Watkins alone. He then saw Appellant Ball approach his cruiser. He testified that the cruiser was running, the lights were on, and the keys were in the ignition. He testified that he left the cruiser running to keep the battery from wearing down and so the radio and lights would remain on. He testified that he watched Appellant Ball get into the cruiser, put it in gear and drive down the road. Sulzener further testified that as Appellant Ball drove off in his cruiser, he was trying to call for help because Appellant Watkins was not cooperating. However, his radio did not work because "[o]nce your portable gets so far from your car, because it does run off of repeater system, the portable radio will not work." He testified that there were loaded weapons, a taser, extra magazines and bullets in his cruiser when Appellant Ball drove away. Further, he testified that without his cruiser both he and Appellant Watkins were in danger because he could not properly confine Appellant Watkins in the back of the cruiser. Because he could not contact the patrol post for help, the struggle with Appellant Watkins continued.
 {¶ 23} Under R.C. 2913.02(A)(1), "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"
 {¶ 24} To deprive is to "[w]ithhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration[.]" R.C. 2913.01(C)(1). Appellant Ball argues that because she pulled to the side of the road after traveling only an eighth of a mile, less than one minute, she did not deprive the State of the vehicle under the above definition. However, "`[i]n a prosecution for theft under R.C. 2913.02, the least removing of an item with an intent to deprive the owner of it is a sufficient asportation, though the property is not removed from the premises of the owner nor retained in the possession of the defendant.'" State v. Houseman (1990),70 Ohio App.3d 499, 513 (finding that the jury could reasonably conclude that the appellant was attempting to escape when he took the vehicle, and although he did not successfully remove it from the owner's property, he possessed the requisite intent and performed the asportation necessary to commit grand theft), quoting State v. Williams (1984),16 Ohio App.3d 232, 234. The question of whether Appellant Ball actually deprived the State of the cruiser is not at issue. At issue is whether she intended to deprive the State of its property "at the time" she took it. SeeBrooklyn v. Fouche, 8th Dist. No. 85510, 2006-Ohio-169, at ¶ 37. The fact that Appellant Ball traveled a mere eighth of a mile does not negate the fact that when she entered Sulzener's cruiser, she intended to deprive him of it. We consider intent to deprive at the time the cruiser was taken, not at the time she pulled over. Therefore, we find that the State presented sufficient evidence that Appellant Ball intended to deprive the State of Ohio of the patrol vehicle under the definition above.
 {¶ 25} Appellant Ball further argues that if we find the evidence was sufficient to submit the charge to the jury, we should find that the manifest weight of all the evidence presented indicated Appellant Ball should not have been convicted. However, Appellant Ball has failed to identify the relevant portions of the record upon which the errors are based. See App.R. 12(A)(2). She has provided no citations to relevant law or to the record. Therefore, we are unable to conclude that the jury lost its way during deliberations and that Appellant Ball's conviction resulted in a manifest miscarriage of justice. Accordingly, Appellant Ball's first assignment of error is overruled.
 WATKINS' ASSIGNMENT OF ERROR III "PROSECUTORIAL MISCONDUCT DEPRIVED [APPELLANT] WATKINS OF A FAIR TRIAL, MERITING REVERSAL."
 {¶ 26} In his third assignment of error, Appellant Watkins argues that prosecutorial misconduct deprived him of a fair trial meriting reversal. We do not agree.
 {¶ 27} "The standard of review on a claim of prosecutorial misconduct requires a determination of whether the prosecutor's misconduct may have been so egregious that the defendant was denied the fundamental right to a fair trial." State v. Koval, 12th Dist. No. CA2005-06-083,2006-Ohio-5377, at ¶ 46, citing State v. Iocona (2001), 93 Ohio St.3d 83,104.
 {¶ 28} In the instant case, Appellant Watkins did not move for a mistrial following the alleged prosecutorial misconduct. Because he did not move for a mistrial, and because he has not alleged that the trial court committed plain error during trial, we decline to address the issue. See State v. Newman, 9th Dist. No. 23038, 2006-Ohio-4082, at ¶ 6. Accordingly, Appellant Watkins' third assignment of error is overruled.
 III. {¶ 29} Appellants' assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Court of Appeals of Ohio, Ninth Judicial District
Costs taxed to Appellants.
WHITMORE, P. J. BOYLE, J. CONCUR