DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Roger K. Marshall, appeals from his conviction by the Lawrence County Common Pleas Court for three counts of aggravated murder with specifications and twelve counts of aggravated arson. Appellant contends the trial court erred by 1) not suppressing certain statements he made before receiving medical treatment; 2) not suppressing certain evidentiary materials taken from his residence; 3) admitting expert witness testimony without proper foundation as to certainty or reliability; 4) improperly admitting evidence of past bad acts; *Page 2 
and 5) not declaring a mistrial, as to the guilt phase of the trial, because of jury misconduct.
 {¶ 2} Because Appellant's statements and his permission to search his residence, before receiving medical treatment, were made voluntarily, his first and second assignments of error are without merit. Further, because the expert testimony, which was objected to, met the requirements for certainty and reliability under Evid.R. 702, Appellant's third assignment of error is without merit. Similarly, because testimony concerning Appellant's past bad acts was admitted for purposes of proving motive and intent, and not for purposes of demonstrating Appellant's character, his fourth assignment of error is also without merit. Finally, because the trial court determined there was no jury misconduct during the guilt phase of the trial, and because the court properly dismissed two jurors due to alleged misconduct during the sentencing phase, Appellant's fifth assignment of error is without merit. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court.
 I. Facts {¶ 3} In the early afternoon of August 1, 2004, Appellant Roger Marshall entered a bar he frequented, the JAB. Witnesses testified that Appellant remained at the bar the rest of the day, drinking and playing pool *Page 3 
until after midnight. At some point during that day, while Appellant was at the JAB, Lolaetta Hicks and John Meyer also entered the bar.
 {¶ 4} Lolaetta Hicks and Appellant had been involved in a romantic relationship which spanned several years, but that relationship had recently ended. Hicks was now seeing John Meyer and often stayed with him at the Lyle Motel. No one observed any confrontational exchanges between Appellant and Hicks and Meyer the night of August 1. However, the previous night, at the same bar, Appellant was seen arguing with both Hicks and Meyer and Appellant pulled Hicks' hair on two occasions. Further, Appellant was heard telling Hicks, "[y]ou will pay for what you're doing to me." The exact times Hicks and Meyer left the JAB on August 1 is uncertain, but both left before Appellant. According to the bartender, Melinda Malone, Appellant stayed at the JAB until sometime between 1 and 2 a.m., the early hours of August 2.
 {¶ 5} On August 2, at approximately 2 a.m., the Ironton Fire Department responded to a call reporting a fire at the Lyle Motel. The fire extensively damaged the building and caused the deaths of Hicks, Meyer and James Reed, another occupant of the motel.
 {¶ 6} After she closed the JAB that night, Melinda Malone noticed the fire trucks and activity at the Lyle Motel and informed the owner of the *Page 4 
JAB, Joyce Bradford. Malone and Bradford became aware that John Meyer might have been killed in the fire. Knowing that Lolaetta Hicks was often with Meyer, Malone and Bradford were concerned that Hicks might have also been a victim. Hoping she was instead with Appellant, they went to his residence at approximately 3 a.m.
 {¶ 7} When the women arrived at Appellant's residence, they were startled and scared by his altered appearance. His hair looked like it was wet or greased and his face was covered with beads of fluid. His appearance was so different that they did not initially recognize him. Malone and Bradford asked Appellant if Hicks was there and told him that if she wasn't she might have been killed in the Lyle Motel fire.
 {¶ 8} Malone and Bradford then went back to the scene of the fire and told Ironton Police Captain Chris Bowman what they had observed when they spoke to Appellant. Bowman then went to Appellant's residence and, after reading him his Miranda Rights, interviewed him. Bowman testified that Appellant appeared to have burn injuries. Appellant told Bowman he had been injured by a carburetor back-fire while working on his motorcycle. Bowman observed no fire damage to the motorcycle, but he did see what appeared to be skin hanging from the handlebars. *Page 5 
 {¶ 9} Bowman asked Appellant to accompany him to the scene of the fire and Appellant agreed to do so. There, Appellant gave a different explanation for his burn injuries. He told Assistant Chief Kenneth Crawford of the Fire Marshall's office that his motorcycle had run out of gas and he had pushed it to a gas station. He claimed that when he put gas into the motorcycle, some of it spilled onto the engine and the motorcycle caught fire. According to Appellant, this happened at approximately 5:30 p.m. on August 1st. An attendant from the gas station testified that no such fire took place.
 {¶ 10} After being interviewed and signing a consent to search his residence, Appellant was placed under arrest at the fire scene. He was then transported to a hospital for treatment for his burns. Two paramedics testified that, during the ride to the hospital, Appellant started to cry and stated: "I'm sorry I did it. Lolaetta is dead." When asked to repeat what he had said, Appellant answered: "I didn't say anything."
 {¶ 11} After his arrest, investigators returned to Appellant's residence where they seized evidentiary materials including clothing, boots, a wastebasket containing singed hair and Appellant's motorcycle.
 {¶ 12} On October 16, 2004, Appellant was indicted on three counts of aggravated murder with specifications and twelve counts of *Page 6 
aggravated arson for the Lyle Motel fire. The guilt phase of trial began on February 15, 2006. After a seven day trial, the jury found Appellant guilty on all counts.
 {¶ 13} The jury was dismissed until the sentencing phase of the trial, which was to start in April. During this recess, Appellant made a motion for mistrial due to jury misconduct. The trial court denied the motion but excused the juror responsible for the alleged misconduct and eventually dismissed another juror who was aware of the alleged misconduct.
 {¶ 14} The sentencing phase of the trial began in April. The jury was unable to reach a consensus and deadlocked. As a result, the trial court declared a mistrial as to the penalty phase and discharged the jury. After declaring the mistrial, the trial court sentenced Appellant to two life sentences without the possibility of parole plus ten years. Appellant then filed the current appeal.
 II. Assignments of Error {¶ 15} "I. THE TRIAL COURT'S REFUSAL TO SUPPRESS DEFENDANT'S STATEMENTS WAS ERRONEOUS, PREJUDICIAL, AND WARRANTS REVERSAL OF THE JUDGMENT BELOW.
 {¶ 16} II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN REFUSING TO SUPPRESS THE *Page 7 
EVIDENTIARY ITEMS SEIZED AT DEFENDANT'S RESIDENCE.
 {¶ 17} III. THE TRIAL COURT ERRED IN ADMITTING EXPERT TESTIMONY WITHOUT PROPER FOUNDATION AS TO CERTAINTY OR RELIABILITY.
 {¶ 18} IV. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF BAD ACTS ON THE PART OF THE DEFENDANT IN VIOLATION OF THE RULES OF EVIDENCE.
 {¶ 19} V. THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL REQUESTED BY DEFENDANT BECAUSE OF JURY MISCONDUCT."
 III. First Assignment of Error {¶ 20} In his first assignment of error, Appellant argues the trial court should have suppressed certain statements made to law enforcement officers because they were not voluntarily given.
 {¶ 21} Captain Bowman of the Ironton Police Department informed Appellant of his Miranda rights before he began questioning him at his residence the night of the fire. Appellant told Bowman he understood his rights and was willing to answer questions. He was not placed under arrest at the time. Appellant was obviously burnt, but understood the questions and responded appropriately. He did not appear angry, confused or upset. Appellant was repeatedly asked if he required medical attention, but declined all such offers. Bowman asked Appellant to accompany him to the scene of the fire and he agreed. He rode to the *Page 8 
scene in the passenger seat of Bowman's car. Appellant was questioned further at the fire scene. Shortly after giving consent to search his apartment, he was placed under arrest.
 {¶ 22} Appellant does not challenge that he was mirandized prior to being questioned. Rather, he based his motion to suppress on the claim that none of his statements were voluntary. Appellant was not treated for his burn injuries until after he was placed under arrest and he contends the severity of these injuries clearly impaired his faculties. He claims his capacity for self-determination was impaired and, therefore, all his statements before treatment were, in effect, made involuntarily.
 {¶ 23} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Book, 165 Ohio App.3d 511,847 N.E.2d 52, 2006-Ohio-1102, at 9; State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8;State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Appellate courts must accept a trial court's factual findings so long as competent and credible evidence supports those findings. State v. Metcalf(1996), 111 Ohio App.3d 142, *Page 9 
145, 675 N.E.2d 1268; State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7. A reviewing court then conducts a de novo review of the trial court's application of the law to the facts of the case. State v.Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
 {¶ 24} Whether a statement was made voluntarily and whether a person knowingly, voluntarily, and intelligently waives his right to counsel and his right against self-incrimination are different issues. State v.Eley (1996), 77 Ohio St.3d 174, 178, 672 N.E.2d 640. As such, even if Miranda warnings were required and given, a defendant's statements may be made involuntarily and, thus, be subject to exclusion. State v.Kelly, 2nd Dist. No. 2004-CA-20, 2005-Ohio-305, at ¶ 11.
 {¶ 25} "The test for voluntariness under a Fifth Amendment analysis is whether or not the accused's statement was the product of police overreaching." State v. Finley (June 19, 1998), 2nd Dist. No. 96-CA-30, at *8. "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88, 91,559 NE.2d 459. "In determining whether a suspect's statement was made voluntarily, a court should consider the totality of the circumstances. These *Page 10 
circumstances include `the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" State v. Sneed, 166 Ohio App.3d 492,2006-Ohio-1749, 851 N.E.2d 532, at ¶ 31, quoting State v. Edwards
(1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051.
 {¶ 26} In the case at bar, though Appellant contends, because of his burns, he was incapable of making statements voluntarily, the evidence shows otherwise. Appellant contends that `[g]iven that defendant was not given medical treatment until after he was arrested, his faculties were clearly impaired." However, Appellant, though obviously burned, was observed to be coherent, cooperative and responsive by multiple witnesses. He answered questions intelligently and appropriately and witnesses observed no signs of impairment. Further, Appellant refused offers of medical treatment numerous times. There is no evidence that, during questioning, Appellant ever complained of pain or distress due to his injuries. Before his arrest, Appellant was questioned at his home and at the scene of the fire. The questioning was neither intense nor lengthy. There is no evidence Appellant was threatened or coerced in any manner into making his statements. In light of the multiple offers of medical attention, *Page 11 
any physical deprivation was intelligently and consciously chosen by Appellant.
 {¶ 27} Considering the totality of the circumstances, there is no evidence of the kind of police overreaching necessary to conclude Appellant's statements were made involuntarily. The evidence shows Appellant's will was not overborne and his capacity for self-determination was not critically impaired. As such, the statements made by Appellant, before receiving medical treatment, were properly admitted. Appellant's first assignment of error is overruled.
 IV. Second Assignment of Error {¶ 28} Appellant's second assignment of error involves a motion to suppress evidentiary items taken from his residence. Appellant argues though he signed a consent to search form, this consent was not voluntarily given. He also claims language that was handwritten on the form should have limited the scope of the search.
 {¶ 29} When Appellant was questioned at the scene of the fire, Deputy Fire Marshall Bob Lawless asked him for permission to search his residence. Lawless testified that Appellant stated: "I have no problem with that because I didn't do anything." Appellant verbally gave permission to search his residence and also signed a consent to search form. Before *Page 12 
Appellant signed the form, Lawless read it to him in its entirety. The form read in part: "I specifically give my consent and authorize these persons to inspect and remove any items of evidence which maybe related, directly or indirectly, to the investigations of the circumstances and/or the cause of the fire." (Emphasis added). Lawless testified that Appellant in no way asked to limit the scope of the search. After Appellant signed the consent to search form, Lawless hand-wrote the words "for clothing" on the bottom of the form. Lawless testified he did so in order to ensure Appellant's clothing was also retrieved. Lawless testified that in no way did he intend for those words to limit the scope of the search. Soon after signing the consent to search form, Appellant was put under arrest.
 {¶ 30} We stated the appropriate standard of review for a motion to suppress in the previous assignment of error. We next examine the validity of the consent to search form.
 {¶ 31} "Warrantless seizures are unreasonable under the Fourth Amendment except for a few well-delineated exceptions. (Internal citation omitted). One exception is a search conducted by consent."State v. Smith, 1st Dist. No. C-061032, 2007-Ohio-3786, at ¶ 13. "* * *[A] search of property without a warrant or probable cause but with proper consent having been voluntarily obtained does not violate the Fourth Amendment." *Page 13 
 State v. Felder, 8th Dist. No. 87453, 2006-Ohio-5332, at ¶ 16. "Where the state relies upon consent to justify a warrantless search, it bears the burden to show that consent was freely and voluntarily given. (Internal citation omitted). Whether consent was voluntary or was the product of duress or coercion is a question of fact a court must determine from the totality of the circumstances." Smith at ¶ 13.
Whether an individual voluntarily consented to a search is a question of fact, not a question of law. See Ohio v. Robinette (1996), 519 U.S. 33,40, 117 S.Ct. 417.
 {¶ 32} Following the analysis of the previous assignment of error, considering the totality of the circumstances, we find that Appellant's decision to sign the consent to search form was freely and voluntary given. Appellant was not under arrest at the time he gave his consent. Appellant gave his consent to search both verbally and in writing. Fire Marshall Lawless read the contents of the consent to search form out loud to him. Appellant rationally and appropriately carried on conversations and answered questions during this time and multiple witnesses testified that Appellant demonstrated no impairment. Because the record supports the trial court's findings, we agree that Appellant's consent to search his residence was voluntary. *Page 14 
 {¶ 33} Appellant claims that even if his consent was voluntary the scope of the search was limited due to Fire Marshall Lawless writing "for clothing" on the bottom of the form. As previously noted, Lawless testified that he wrote those words only to ensure Appellant's clothes were retrieved. He testified they had no bearing on the scope of the search. Both Lawless and Officer Wilson of the Ironton Police Department testified that the words "for clothing" were added after Appellant had already signed the consent form. Further, Wilson and Lawless testified that Appellant in no way asked to limit the scope of the search.
 {¶ 34} "The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect." Felder at 17. In the case at hand, a reasonable person would not have concluded the scope of search was to be limited to clothes only. The text of the consent to search form, which was read aloud to Appellant, stated "any items of evidence" potentially related to the fire could be removed and the evidence shows Appellant signed the form with this understanding. The hand-written words "for clothing" were not written at the request, or under the direction, of Appellant, but were written *Page 15 
simply to ensure that his clothes were collected in addition to any other relevant evidence.
 {¶ 35} Because Appellant voluntarily gave consent to search his residence, and because there is no evidence that Appellant intended to limit the scope of the search, the trial court properly denied his motion to suppress evidentiary items removed from his apartment. As such, Appellant's second assignment of error is overruled.
 V. Third Assignment of Error {¶ 36} In his third assignment of error, Appellant argues the trial court improperly admitted expert testimony without proper foundation as to certainty or reliability. Kenneth Crawford, Assistant Chief with the Investigations Bureau of the State Fire Marshall's Office, testified regarding certain aspects of the fire. After observing the fire scene, he concluded an accelerant had been used. Appellant contends he deserves a new trial because Crawford's testimony was unverifiable, unsubstantiated and non-falsifiable. We disagree.
 {¶ 37} "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid.R. 104(A). Such decisions will not be disturbed absent abuse of discretion." Valentine v.Conrad, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, at ¶ 9. "`Abuse of *Page 16 
discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." Id.
 {¶ 38} Evid.R. 702 governs the admissibility of expert testimony. That rule provides: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result." Evid.R. 702. *Page 17 
 {¶ 39} Assistant Chief Crawford's testimony easily meets the requirements of 702(A) and (B). He testified as to burn patterns, speed and other aspects of fire, matters clearly beyond the knowledge and experience of laypersons. Further, he was eminently qualified to testify due to his specialized knowledge, experience, training, and education. He had over twenty five years of experience as an arson investigator and he estimated he had two thousand hours of formal training in arson investigation and other criminal matters. He had testified numerous times as an expert witness in other arson cases. Further, Assistant Chief Crawford estimated he had investigated one thousand to fifteen hundred arsons in which some type of flammable liquid had been used as an accelerant. Therefore, the only requirement of Evid.R. 702 which Appellant can reasonably challenge is 702(C); witness testimony must be based on reliable scientific, technical, or other specialized information.
 {¶ 40} Assistant Chief Crawford testified that, in his opinion, the fire had been set deliberately and an accelerant had been used. He based this conclusion on a number of factors including: the burn patterns indicated a fast-burning fire that had spread very rapidly; variations in smoke damage and fire damage indicated the fire was mainly confined to the landing and stairway; the most serious damage occurred at the top of *Page 18 
the stairs, on the landing, on the doors of the apartment and the ceiling, and; there was no "fire load" or combustible material at the scene that would have burned that rapidly without an accelerant.
 {¶ 41} Ohio courts have found expert testimony admissible in similar situations. In State v. Hinkle (August, 23, 1996), 11th Dist. No. 95-P-0069, fire investigators testified that a fire had probably been intentionally set. "Upon consideration of the entire record, we cannot say that the trial court abused its discretion in admitting the testimony of [the investigators]. It is our view that the factual foundations for their opinions were sufficiently established. Their credentials as experts were acceptable, their investigative methods were adequate, and the extent of their investigations, while not as comprehensive as could have been performed, were nevertheless reasonable. Further, any doubts or concerns regarding the regularity of their investigative techniques would go to the weight of their testimony and not the admissibility." Id. at *4.
 {¶ 42} In State v. Simpson, 10th Dist. No. 01AP-757, 2002-Ohio-3717, the appellant argued the trial court erred in admitting testimony of an expert regarding the cause of a fire. The court found "[the investigator's] conclusion was based on valid and reliable information resulting from an adequate investigation. He testified that he based his conclusion on his *Page 19 
training, his investigation of the scene * * * and his elimination of other causes. This is reliable information sufficient to support the admissibility of his testimony." Id. at 76. See, also, State v.Campbell, 1st Dist. No. C-020822, 2003-Ohio-7149; State v. Nelson, 9th Dist. No. 04CA0001-M, 2004-Ohio-4967.
 {¶ 43} As already noted, over the course of his career, Assistant Chief Crawford had observed between one thousand and fifteen hundred arson fires in which an accelerant had been used. Further, he had participated in numerous training fires using accelerants. After viewing the scene, he testified that the characteristics of those fires were consistent with the characteristics of the fire in this case. In light of his experience, observations and explanations for his conclusions, we find that his testimony was based on reliable scientific, technical, or other specialized information. As such, his testimony was properly admitted and Appellant's third assignment of error is overruled.
 VI. Fourth Assignment of Error {¶ 44} In his fourth assignment of error, Appellant argues the trial court erred in admitting evidence of past bad acts. Specifically, Appellant objects to the testimony of three witnesses regarding these acts. The testimony of: Larry White, who stated he saw Appellant grab Lolaetta *Page 20 
Hicks and strike her a few days before the fire; Teresa Arbaugh, who testified that, the day before the fire, she saw Appellant argue with Hicks and pull her hair on two occasions, saw Appellant argue with John Meyers and who, on the same occasion, heard Appellant tell Hicks "[y]ou will pay for what you're doing to me," and; Eddie Thibodaux, who testified he help break up a fight between Appellant and Hicks a few days before the fire.
 {¶ 45} As a general rule, evidence of prior crimes, wrongs or bad acts is inadmissible if it is wholly independent of the charge for which an accused is on trial. State v. Aliff (April 12, 2000), 4th Dist. No. 99CA8, at *10. Evid. R. 404(B) states "[evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B). "Thus, while evidence of other crimes, wrongs or acts committed by the accused is not admissible to show that the accused has a propensity to commit crimes, it may be relevant to show: motive, intent, the absence of a mistake or accident, or a scheme, plan, or system in committing the act in question." State v.Dunham, 4th Dist. No. 04CA2931, 2005-Ohio-3642, at ¶ 29. "When other acts evidence is relevant for one of those limited *Page 21 
purposes, the court may properly admit it, even though the evidence may show or tend to show the commission of another crime by the accused." Id.
 {¶ 46} "[Evidence of other crimes and acts of wrongdoing must be strictly construed against admissibility. (Internal citations omitted). Such evidence is only admissible if the other act tends to show by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." State v. Moore, 7th Dist. No. 02CA152,2004-Ohio-2320, at ¶ 44. "It is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment." Id. However, "the decision to admit Evid.R. 404(B) prior acts evidence rests in the trial court's sound discretion and that decision should not be reversed absent an abuse of discretion."State v. Hairston, 4th Dist. No. 06CA3089, 200-Ohio-3707, at ¶ 38.
 {¶ 47} In the case sub judice, Appellant contends the testimony of Larry White, Teresa Arbaugh and Eddie Thibodaux, concerning Appellant's threats, violent acts and confrontational behavior, prior to the fire, was inadmissible under Evid.R. 404(B). In similar situations, we, and other Ohio courts, have found otherwise. *Page 22 
 {¶ 48} In State v Aliff, the appellant, convicted of aggravated murder, claimed the trial court abused its discretion in allowing the prosecution to introduce evidence of past bad acts. In Aliff the appellant was angry at his wife's involvement with another man. He attempted to fight with the other man and assaulted his wife within weeks of her death. We found the testimony regarding this incident was admissible. "This testimony demonstrates that appellant was angry that his wife was involved with Mr. Hager. This anger directed at both Mrs. Aliff and Mr. Hager demonstrates that appellant had a motive to kill his wife and was, therefore, admissible under Evid.R.404(B)." Aliff at *10. The appellant in Aliff also argued that a tape recording, in which he threatened his wife's life, was evidence of a past bad act and should be inadmissible under 404(B). We stated "[t]his tape demonstrates a clear intent to kill Mrs. Aliff and shows an absence of mistake. As it qualifies under these two exceptions delineated in Rule 404(B), it was properly admitted." Id. at *11. See, also, State v. Moore, 7th Dist. No. 02CA152, 2004-Ohio-2320 (evidence of previous fight admissible under 404(B) as motive for murder and intent to cause physical harm).
 {¶ 49} In State v. Nicely, 4th Dist. No. 03CA779, 2004-Ohio-3847, the appellant was convicted of arson. A witness testified that, the night of *Page 23 
the fire, the appellant came by his house brandishing a gun and making threats. We found the testimony both relevant and admissible under 404(B). "We note that [the witness] testified that shortly before the fire, appellant came to his house intoxicated, waved a gun and threatened to kill the `M.F.'er.' While the identity of the `M.F.'er' to whom appellant referred was not definitively revealed, this evidence established that appellant was angry at someone that evening-angry enough to kill that person or, possibly, to burn down his home." Id. at ¶ 19.
 {¶ 50} In State v. Brown, 3rd Dist. No. 9-02-02, 2002-Ohio-6765, the appellant was found guilty of murdering her boyfriend. The appellant argued that evidence of her threats and violence in the months preceding her boyfriend's death was inadmissible under 404(B) because it merely showed she had a predisposition for violence. The prosecution contended the boyfriend's death was the final result of the appellant's jealously, possessiveness, and attempts to control him and the evidence established motive and intent. The court agreed with the prosecution stating that, because the prosecution argued the appellant's motive was driven by her boyfriend's rejection, "[t]he nature of their relationship bore directly on whether she had a motive to harm him or acted knowing that her actions would cause physical harm." Id. at ¶ 27. "It is well established that *Page 24 
evidence of a defendant's threats, violence, or other obsessive behavior in the months preceding a murder is probative of the defendant's motive or intent * * *." Id.
 {¶ 51} The case at hand closely parallels the authority cited above. Appellant was angry that Lolaetta Hicks had ended their relationship and was seeing John Meyers. Appellant's jealousy caused him to argue with and physically assault Hicks on numerous occasions in the days immediately prior to the fire. Further, he specifically told Hicks "[y]ou will pay for what you're doing to me." Testimony recounting these acts of violence and threats was clearly relevant to show Appellant's motive and intent in setting the fire which ultimately killed Hicks and Meyer. Because this testimony was probative of Appellant's motive and intent, it is admissible under 404(B).
 {¶ 52} Finally, under this assignment of error, Appellant argues that even if admissible under 404(B), the testimony is inadmissible under Evid.R. 403(B). 403(B) states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Though not citing the statute directly, Appellant also indicates the testimony is inadmissible under 403(A). 403(A) states: "Although relevant, evidence is not admissible *Page 25 
if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 53} Under his 403(B) argument, Appellant contends there was no need to present additional evidence concerning motive because there was already testimony that he was unhappy that Hicks was seeing Meyer. We do not find that the testimony concerning Appellant's threats and acts of violence toward Hicks was simply cumulative with testimony that Appellant was "bothered" by Hicks relationship with Meyer. We also note the decision to exclude evidence under 403(B) is discretionary. Unlike 403(B), the application of 403(A) is mandatory. However, in this instance, the very strong probative value and the highly relevant nature of the testimony, in establishing motive and intent, was not substantially outweighed by the danger of unfair prejudice.
 {¶ 54} The testimony concerning Appellant's prior acts of violence and threats against Hicks, in the days immediately before the fire, were clearly relevant to show his motive and intent in setting the fire. As such, the testimony was admissible under Evid.R. 404(B). Further, the probative value of the testimony was not substantially outweighed by needless presentation of cumulative evidence and it was not substantially *Page 26 
outweighed by the risk of prejudice. Appellant's third assignment of error is, therefore, overruled.
 VII. Fifth Assignment of Error {¶ 55} Appellant's fifth assignment of error alleges the trial court erred in not granting a mistrial due to jury misconduct. The trial court was informed of an incident of possible juror misconduct, which occurred after the guilt phase of trial had been concluded and before the penalty phase had begun. A witness testified that, during a party, he overheard Juror Lowe making statements concerning the case. The witness testified that Lowe asked people about their opinion of the death penalty. According to the witness, Lowe stated he had already made up his mind about Appellant's sentence and would not change it, no matter what. The witness informed another juror, Debbie Hasenauer, about Lowe's alleged statements and Juror Hasenauer then brought the matter to the trial court's attention.
 {¶ 56} The court questioned Juror Lowe about the incident. Lowe claimed people had made comments to him about the case in a pool hall, but he told them to keep their comments to themselves and left. He claimed that at no time did he express any opinion about the case. Further, he claimed not to have been at the party where the witness allegedly heard *Page 27 
him discuss the case. After questioning Lowe, the trial court dismissed him from the jury panel. The court also eventually excused Juror Hasenauer, not because of any alleged wrongdoing, but because the witness had informed her of Lowe's alleged comments. After dismissing Lowe, the court questioned each remaining juror individually. Each of the remaining jurors indicated they were unaware of any wrongful conduct during guilt deliberations or during the following recess.
 {¶ 57} An inquiry into alleged juror misconduct requires a two-step analysis. "First the trial court must determine whether misconduct occurred. (Internal citation omitted). Then, if juror misconduct is found, the court must determine whether the misconduct materially affected the appellant's substantial rights." State v. Coleman, 4th Dist. No. 05CA3037, 2006-Ohio-3200, at ¶ 10. "Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct." State v. Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136, at *3. "Trial courts are given broad discretion when dealing with allegations of juror misconduct. (Internal citation omitted). Thus, its decision when faced with such allegations must be reviewed for an abuse of discretion." State v. Robinson, 7th Dist. No. 05 JE 8, 2007-Ohio-3501, at ¶ 96. *Page 28 
 {¶ 58} In the case at bar, what Juror Lowe stated or did not state was disputed. If he did, in fact, make up his mind as to Appellant's sentence before the sentencing phase had begun, or if he stated he would not consider the evidence, that constituted misconduct. Assuming Lowe did make the alleged statements, we must still determine whether this misconduct materially affected Appellant's substantial rights.
 {¶ 59} Lowe's alleged comments were made during recess, after the guilty verdict was rendered, but prior to the sentencing phase of the trial. Appellant contends Lowe's comments strongly suggest that he was convinced Appellant was guilty all along and that his opinion must have also infected the deliberations during the guilt phase of the trial. Because of this, Appellant contends the trial court should have declared a mistrial.
 {¶ 60} "In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror."State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 159, quoting State v. Phillips (1995), 74 Ohio St.3d 72, 88,656 N.E.2d 643. "It is well established that [t]he trial judge is in the best position to determine the nature of the alleged jury misconduct and the appropriate remedies for any demonstrated misconduct." State v.Watkins, 9th Dist. No. 23133, *Page 29 
23145, 2006-Ohio-6380, at ¶ 8, quoting State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 184. Here, the trial court excused Juror Lowe because of comments allegedly made after the guilt phase, but before the sentencing phase had begun. The trial court even excused Juror Hasenauer, not due to any misconduct on her part, but simply because she was aware of the alleged comments. The court further interviewed each remaining juror to ascertain if they were aware of any impropriety. Each juror indicated they were aware of none. Further, Appellant provides no evidence of misconduct during the guilt phase of the trial. Lowe's alleged comments only concerned his opinion as to Appellant's sentence.
 {¶ 61} Juror misconduct does not necessarily require reversal. The misconduct must be prejudicial. State v. Taylor (1991),73 Ohio App.3d 827, 832, 598 N.E.2d 818. Here, there was no prejudice. There was no evidence of misconduct during the guilt phase of the trial and the court properly excused two jurors from the sentencing phase due to Lowe's alleged misconduct. Juror Lowe was excused before the sentencing phase had even begun, so none of the remaining jurors were even aware of the alleged misconduct. Further, the trial court interviewed each juror to ensure that deliberations had not been tainted. Under these circumstances, *Page 30 
we cannot say the trial court abused it's discretion in denying a motion for mistrial. Thus, Appellant's fifth assignment of error is overruled.
 VIII. Conclusion {¶ 62} In our view, Appellant has failed to establish any of his
assignments of error. While the record shows he had burn injuries, there is no evidence that Appellant's will was overborne and his capacity for self-determination was critically impaired. Accordingly, his statements to authorities and his consent to search his residence were given voluntarily. Furthermore, expert testimony regarding aspects of the fire met the requirements of Evid.R. 702 and, thus, was properly admitted. Similarly, because testimony concerning past bad acts was admitted for purposes of proving motive and intent under Evid. R. 404(B), such testimony was admissible. Finally, Appellant's motion for a mistrial due to juror misconduct, as to the guilt phase of the trial, was properly denied by the trial court. The record reveals no evidence of misconduct during the guilt phase and the trial court dealt with any possible misconduct regarding the sentencing phase by excusing two jurors. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court.
 JUDGMENT AFFIRMED. *Page 31 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, III, and IV and Concurs in Judgment Only as to Assignment of Error V. *Page 1