[Cite as *State v. Dukes*, 2017-Ohio-7204.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case Nos. 16CA3745 |
| | : | 16CA3760 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| YOLANDA DUKES, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 08/07/17** |

_____

APPEARANCES:

James H. Banks, Dublin, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Appellant, Yolanda Dukes, appeals the trial court's judgment denying her motion to suppress, her convictions and sentences imposed after a jury trial, as well as the trial court's judgment denying her motion for a new trial. On appeal, Appellant contends that 1) the trial court erred in refusing to suppress her statements and the pills obtained through illegal search of her vehicle; 2) her due process rights were violated and her indictment and conviction did not set forth proper elements of the crimes charged, nor the valid statutory provisions for the crimes such as to require

reversal of her convictions; 3) the trial court erred in sentencing her; and 4) the trial court erred in refusing to grant a new trial based upon jury misconduct.

{¶2} Because we have failed to find merit in any of the assignments of error raised by Appellant, the judgments of the trial court with regard to both motions to suppress and the motion for new trial court are affirmed. Further, the judgment of the trial court convicting and sentencing Appellant on felony trafficking and possession of oxycodone and hydrocodone is also affirmed.

FACTS

{¶3} A review of the record herein indicates that Appellant was indicted on four felony counts as follows: count one, aggravated trafficking (oxycodone/schedule II) in violation of R.C. 2925.03(A)(2) and 2925.03(C)(1)(d), a second degree felony; count two, aggravated possession of drugs (oxycodone/schedule II) in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(1)(c), a second degree felony; count three, trafficking in drugs (hydrocodone/schedule III) in violation of R.C. 2925.03(A)(2) and R.C. 2925.03(C)(2)(d), a third degree felony; and count four, possession of drugs

(hydrocodone/schedule III) in violation of R.C. 2925.11(A) and

2925.11(C)(2)(c), a third degree felony.[1]

{¶4} The indictment stemmed from a traffic stop that occurred on

January 2, 2015. As the case proceeded through discovery, Appellant filed

two different motions to suppress. The first motion primarily focused on the

traffic stop and search, and it was denied by the trial court. The second

motion primarily focused on statements made by Appellant allegedly

without the benefit of *Miranda* warnings. The trial court granted the motion

in part, ordering all statements made by Appellant prior to receiving

*Miranda* warnings at the Ohio State Highway Patrol Post be suppressed.

However, the trial court found that *Miranda* warnings were given at the

patrol post and that statements made thereafter were admissible.

{¶5} The case proceeded to a two-day jury trial. The State presented

three witnesses, including Trooper Drew Kuehne (the K-9 officer who

initiated the traffic stop), Trooper Nick Lewis (another trooper who assisted

with the stop and search), Detective Steve Brewer (for stipulations to chain

of custody), and Jennifer Sulcebarger, a forensic drug chemist employed

with the Ohio Bureau of Criminal Identification and Investigation (who

testified regarding the identification and amount of the drugs discovered in

---

[1] As will be discussed below, hydrocodone is actually a Schedule II drug, not a Schedule III drug.

Appellant's vehicle). Appellant testified on her own behalf and presented no other witnesses.

{¶6} A review of the trial testimony indicates that Appellant was traveling southbound in a rented vehicle with out-of-state license plates on Route 23 near Portsmouth, Ohio, with a passenger, Darryl Brown, at approximately 11:45 a.m. on January 2, 2015. According to Trooper Kuehne, Appellant was stopped after she made an abrupt lane change which cut off the vehicle behind her, and thereafter traveled over the fog line, resulting in a marked lanes violation.[2] The violations were not caught on the cruiser video. Trooper Kuehne asked Appellant to get out of her vehicle and placed her in the front seat of his cruiser while he ran the license and information of both Appellant and her passenger.

{¶7} While waiting on information from dispatch, Trooper Kuehne asked Appellant where she was going, and she said she was going to Cincinnati to shop. When he informed her she wasn't headed towards Cincinnati, she then stated she was going to Kentucky first to visit a cousin. Appellant also stated they were returning to Michigan that day, as she had to turn the car in the next day. Trooper Kuehne considered Appellant's story to be odd due to the stated destinations and time frames and, as a result, he

---

[2] Appellant testified at trial and denied committing any traffic violations.

requested dispatch to also run a criminal history report as well. Trooper Kuehne then asked the passenger, who was still seated in Appellant's vehicle, the same questions. Based upon the answers given by the passenger, Trooper Kuehne decided to walk his dog around Appellant's vehicle to conduct a canine sniff. Another officer, Trooper Lewis, arrived around this time to assist.

{¶8} The canine sniff resulted in the K-9 indicating on the driver's side door of Appellant's vehicle. As a result, Appellant and her passenger were both placed in the back of Trooper Lewis' cruiser while both troopers conducted a search of the vehicle. The troopers eventually located approximately 500 oxycodone pills and approximately 200 hydrocodone pills in the passenger side kick panel, as well as a MapQuest printout with directions from 17661 Collinson Avenue, East Point, Michigan, which was Appellant's address, to 1601 High Street, Portsmouth, Ohio.

{¶9} Appellant and her passenger were then transported to the patrol post, where they were Mirandized and questioned. The passenger remained silent but Appellant engaged in a conversation with law enforcement which resulted in her informing them that she was bringing the drugs in question to "a fein named Rock," and that the directions were to his house. Trooper Lewis was familiar with a Rocky Newman, whose mother lived on High

Street, and obtained a photo of Rocky.  Appellant confirmed the photo was the "Rock" she was to meet to deliver the drugs and obtain $13,000 in exchange.  Appellant then worked with law enforcement to conduct an attempted controlled buy involving Rocky Newman at a local motel. Apparently, however, no deal ended up being made and little other information was presented regarding the results of the attempted controlled buy.  Appellant and her passenger were both permitted to go home that night.

{¶10}  The case was submitted to the jury for a decision, which ultimately resulted in Appellant being convicted on all counts of the indictment.  In imposing sentence, the trial court merged count two with count one and imposed a stated mandatory prison term of five years.  The trial court also merged count four with count three and imposed a stated mandatory prison term of thirty-six months.  The trial court further ordered the sentences to be served consecutively.  Thereafter, a report of alleged juror misconduct was brought to the trial court's attention by way of Appellant's filing of a motion for a new trial.  The motion alleged that jurors had utilized their cell phones during jury deliberations to look up information and definitions related to the charges.

{¶11}  As a result, the trial court conducted a hearing attended by all of the jurors on the case.  After questioning each juror and being satisfied that the misconduct did not affect the outcome of the trial, the trial court denied Appellant's motion for a new trial.  Appellant has now timely appealed from her convictions and sentences, as well as the trial court's denial of her motions to suppress and motion for a new trial, setting forth the following assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.   THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS
      DEFENDANT'S STATEMENTS AND THE PILLS OBTAINED
      THROUGH ILLEGAL SEARCH OF HER VEHICLE.

II.   THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED
      AND HER INDICTMENT AND CONVICTION DID NOT SET
      FORTH PROPER ELEMENTS OF THE CRIMES CHARGED NOR
      THE VALID STATUTORY PROVISIONS FOR THE CRIMES
      SUCH TO REQUIRE REVERSAL OF HER CONVICTIONS.

III.  THE TRIAL COURT ERRED IN SENTENCING THE
      DEFENDANT.

IV.   THE TRIAL COURT ERRED IN REFUSING TO GRANT A NEW
      TRIAL BASED UPON JURY MISCONDUCT."

ASSIGNMENT OF ERROR I

{¶12}  In her first assignment of error, Appellant challenges the trial court's denial of her motions to suppress.  Appellant raises multiple issues under this assignment of error, which are as follows: 1) whether the stop of

her vehicle was unlawful and based impermissibly on racial profiling and lack of probable cause; 2) whether the canine sniff of her vehicle unlawfully extended the traffic stop; 3) whether the search of her vehicle was based upon speculation and violates her Fourth Amendment rights; 4) whether her interrogation prior to receiving *Miranda* warnings requires suppression of her statements; 5) whether the statements she made prior to receiving *Miranda* warnings require suppression of later statements as fruit of the poisonous tree; 6) whether the trial court's ruling admonishing her that statements made at her suppression hearing could be used against her at trial improperly required her to forfeit her *Miranda* rights, such to require reversal of her convictions; and 7) whether said admonitions constitute plain error and require reversal of her convictions.

## STANDARD OF REVIEW

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Gurley*, 2015–Ohio–5361, 54 N.E.3d 768, ¶ 16 (4th Dist.); citing *State v. Roberts*, 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.*; *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a

motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16; citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However, "[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id.*; citing *Roberts* at ¶ 100.

## FOURTH AMENDMENT

{¶14} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsbury*, 4th Dist. Ross No. 13CA3402, 2014–Ohio–716, ¶ 14; quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012–Ohio–5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial." *Id.*; citing *Emerson* at ¶ 15; *see also State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012–Ohio–971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

INITIAL STOP

**{¶15}** "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008–Ohio–6691, ¶ 14; *see also State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013–Ohio–4812, ¶ 13 (quoting *Lewis*). "To be constitutionally valid, the detention must be reasonable under the circumstances." *Lewis* at ¶ 14. "While probable cause 'is certainly a complete justification for a traffic stop,' it is not required." *Eatmon* at ¶ 13; quoting *State v. Mays*, 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 23. "So long as 'an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *Id.*; quoting *Mays* at ¶ 8. "Reasonable and articulable suspicion is a lower standard than probable cause." *Id.*; citing *Mays* at ¶ 23.

**{¶16}** A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Debrossard*, 4th Dist. Ross. No. 13CA3395, 2015–Ohio–1054, ¶ 13; citing *State v. Guseman*, 4th Dist. Athens No. 08CA15, 2009–Ohio–952, ¶ 20; citing *State v. Bowie*, 4th Dist. Washington No. 01CA34, 2002–Ohio–3553, ¶ 8, 12, and 16; citing

*Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996). *See also*

*Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus.

Further, the Supreme Court of Ohio has clearly stated: "Where a police

officer stops a vehicle based on probable cause that a traffic violation has

occurred or was occurring, the stop is not unreasonable under the Fourth

Amendment to the United States Constitution even if the officer had some

ulterior motive for making the stop[.]" *Dayton* at paragraph one of the

syllabus.

{¶17}  Additionally, with respect to allegations of racial profiling,

racial profiling has been rejected as a legal basis for the suppression of

evidence. *State v. Coleman*, 3rd Dist. Hancock No. 5-13-15, 2014-Ohio-

1483, ¶ 18; citing *State v. Chambers*, 3rd Dist. Hancock No. 5-10-29, 2011-

Ohio-1305, ¶ 22; *see also United States v. Cousin*, 448 Fed.Appx. 593, 594

(6th Cir.2012) (explaining that *United States v. Nichols*, 512 F.3d 789, 794-

795 (6th Cir. 2008) precludes the application of the exclusionary rule for

alleged racial profiling.).  In *City of Cleveland v. Oko*, 2016-Ohio-7774, --

N.E.3d--, ¶ 20 (8th Dist.), the court noted that "[a]ll challenges to the

validity of a traffic stop are subject to the same *Terry* standard of review,

even where the defendant raises allegations of pretext."  Additionally, in

*State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 68 (3rd Dist.), the court

noted that "[a]ny ulterior motives for the traffic stop are irrelevant to the determination of whether the officers possessed a reasonable, articulable suspicion justifying the stop." (internal citations omitted).

{¶18}  Here, Trooper Kuehne, along with his K-9, stopped Appellant's vehicle as it was heading south on Route 23 just outside of Portsmouth, Ohio, after witnessing Appellant make an abrupt lane change that cut off a vehicle in the right lane, then travel outside of her lane and slow to approximately 45 m.p.h. in a 55 m.p.h. zone.  Although these traffic violations were not on video, Trooper Kuehne testified regarding the reasons he stopped Appellant's vehicle at both a suppression hearing and later at trial.  As set forth above, it is well settled that a traffic stop is lawful even if the traffic violations are minor, or "de minimus."

{¶19}  Furthermore, as set forth above, when a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment even if the officer had some ulterior motive for making the stop.  Thus, because the trial court accepted the testimony that the trooper witnessed two traffic violations, and because even a de minimus traffic violation constitutes probable cause to initiate a traffic stop, the record indicates that the initial stop of Appellant's vehicle was lawful, despite Appellant's allegation that

the trooper had an ulterior motive of racial profiling.  As such, we reject

Appellant's argument that the initial stop of her vehicle was unlawful.

CANINE SNIFF AND DURATION OF STOP

{¶20}  The scope and duration of a routine traffic stop "must be

carefully tailored to its underlying justification * * * and last no longer than

is necessary to effectuate the purpose of the stop." *Debrossard* at ¶ 16;

quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983); *see*

*also State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th

Dist.1995) and *State v. Hughes*, 4th Dist. Ross No. 97CA2309, 1998 WL

363850.  The rule set forth in *Royer* is designed to prevent law enforcement

officers from conducting "fishing expeditions" for evidence of a crime. *See*

*generally Gonyou*; *Sagamore Hills v. Eller,* 9th Dist. Summit No. 18495,

1997 WL 760693 (Nov. 5, 1997); *see also Fairborn v. Orrick*, 49 Ohio

App.3d 94, 95, 550 N.E.2d 488 (2nd Dist.1988), (stating that "the mere fact

that a police officer has an articulable and reasonable suspicion sufficient to

stop a motor vehicle does not give that police officer 'open season' to

investigate matters not reasonably within the scope of his suspicion").

{¶21}  Generally, "[w]hen a law enforcement officer stops a vehicle

for a traffic violation, the officer may detain the motorist for a period of time

sufficient to issue the motorist a citation and to perform routine procedures

such as a computer check on the motorist's driver's license, registration and vehicle plates." *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003–Ohio–4909, ¶ 36; citing *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995); *see also Rodriguez v. United States*,—U.S.—, 135 S.Ct. 1609, 1615 (2015) (ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.*; citing *State v. Cook*, 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70 (1992) (fifteen-minute detention was reasonable); *United States v. Sharp*, 470 U.S. 675, 105 S.Ct. 1568 (1985), (twenty-minute detention was reasonable).

{¶22} Additionally, once a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification. *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 16; citing *State v. Huffman*, 2nd Dist. Clark No. 2010–CA–104, 2011-Ohio-4668, ¶ 8. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, fn. 6 (1977); *See also State v. Alexander–Lindsey*, 2016-Ohio-

3033, 65 N.E.3d 129, ¶ 14 ("Officers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation.") (internal citations omitted).  However, "the officer must 'carefully tailor' the scope of the stop 'to its underlying justification,' and the stop must 'last no longer than is necessary to effectuate the purpose of the stop.' " *State v. Marcinko*, 4th Dist. Washington No. 06CA51, 2007-Ohio-1166, ¶ 26; quoting *Florida v. Royer* at 500.  "An officer may lawfully expand the scope of the stop and may lawfully continue to detain the individual if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *Id.*

{¶23}  Further, a lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Rusnak*, 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist.1997).  Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004–Ohio–7280, ¶ 24; *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637 (1983).  Thus, a canine check of a

vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. *Jones* at ¶ 24.

**{¶24}** During a continued, lawful detention of a vehicle, as discussed above, officers are not required to have a reasonable, articulable suspicion of criminal activity in order to call in a canine unit to conduct a canine sniff on the vehicle. *See, e.g., State v. Feerer*, 12th Dist. Warren No. CA2008–05–064, 2008–Ohio–6766, ¶ 10. "Because the 'exterior sniff by a trained narcotics dog is not a search within the meaning of the Fourth Amendment to the Constitution,' a canine sniff of a vehicle may be conducted even without the presence of such reasonable, articulable suspicion of criminal activity so long as it is conducted during the time period necessary to effectuate the original purpose of the stop." *Id. See also United States v. Place, supra.* "A drug sniffing dog used to detect the presence of illegal drugs in a lawfully detained vehicle does not violate a reasonable expectation of privacy and is not a search under the Ohio Constitution." *State v. Waldroup*, 100 Ohio App.3d 508, 514, 654 N.E.2d 390 (12th Dist.1995).

**{¶25}** Further, "[a]n officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a

reasonable suspicion that additional criminal activity is afoot." *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006–Ohio–5292, ¶ 17; citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997).  The *Robinette* court explained, at paragraph one of the syllabus:

> "When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."

Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.' " *Rose* at ¶ 17; quoting *Robinette* at 241.

{¶26}  However, the United States Supreme Court in *Rodriguez v. United States, supra,* recently held that while a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615. Accordingly, the Court concluded that police officers may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* at 1614–1617. (Emphasis added).

**{¶27}** Finally, "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci*, 11th Dist. Lake No. 2001–L–205, 2003–Ohio–702, ¶ 30. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *State v. Ulmer*, 4th Dist. Scioto No. 09CA3283, 2010–Ohio–695, ¶ 23; *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). Thus, when an appellate court reviews a police officer's reasonable suspicion determination, "the court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers." *Ulmer* at ¶ 23; *Ornelas v. United States*, 517 U.S. at 699.

**{¶28}** Here, based upon our review of the record, Appellant's vehicle was initially stopped at approximately 11:45 a.m. Upon approaching the vehicle, Trooper Kuehne noted Appellant appeared to be extremely nervous, to the extent he could see Appellant's pulse in the side of her neck, and also observed Appellant's hands to be shaking. Trooper Kuehne also noted the passenger would not make eye contact and was breathing very heavily. Trooper Kuehne obtained information from both Appellant and her passenger and asked Appellant to step out of the vehicle and sit in his cruiser

while he ran their information, which he stated would take a little longer because they were both from out state. As set forth above, law enforcement may lawfully order both a driver and passenger from the vehicle without reasonable suspicion of criminal activity and may also run certain checks regarding the identity of the driver and passenger upon making a traffic stop. Thus, we find no error with the removal of Appellant from the vehicle or the request for information from both Appellant and her passenger.

{¶29} After speaking to both Appellant and her passenger separately and observing that they had differing stories as to their purpose, destination and return time, and while waiting on the requested information to be provided by the computer and/or dispatch, the trooper decided to walk his dog around the vehicle for a canine sniff of the exterior of the vehicle. The canine was deployed and began conducting the sniff at 12:01 p.m., just sixteen minutes after the initial stop was made. Again, as set forth above, a canine sniff of a vehicle may be performed without reasonable suspicion of criminal activity and does not constitute a search within the meaning of the Fourth Amendment. Thus, Trooper Kuehne was not required to have reasonable suspicion of criminal activity to deploy his canine and we find none was needed in this scenario.

{¶30} However, as explained above, in the absence of reasonable suspicion, a canine sniff cannot serve to extend an otherwise completed traffic stop. With respect to the duration of the stop, it has been noted that "an officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes." *State v. White*, 8th Dist. Cuyahoga No. 100624, 2014-ohio-4202, ¶ 22; quoting *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-3804, 91 N.E.2d 1138, ¶ 23 (6th Dist.); *but see State v. Alexander-Lindsey, supra,* (approving the deployment of K-9 twenty-two minutes into the stop). Again, here, Trooper Kuehne was still waiting on the information he requested on both the driver and passenger to be returned, which as he explained to Appellant during the stop and also testified at trial, usually took a little longer to obtain for out-of-state licenses. Further, because he was still awaiting the requested information, he had not begun to issue either a verbal or written warning or citation.

{¶31} In *Rodriguez*, a police officer issued a written warning to the defendant Rodriguez during a traffic stop. *Id.* at 1613. After the officer returned Rodriguez's information and " '* * * got all the reason[s] for the stop out of the way[,]* * *' " the officer asked for permission to walk his dog around Rodriguez's vehicle. *Id.* After Rodriguez refused to consent to the request, the officer instructed Rodriguez to turn off the ignition, exit the

vehicle, and stand in front of the patrol car to wait for a second officer to arrive with a dog. *Id.* The dog later conducted a sniff and alerted to the presence of drugs in the vehicle. *Id.* A search of the vehicle revealed a large bag of methamphetamine. *Id.*

{¶32} The United States Supreme Court held that while a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615. Accordingly, the Court concluded that police officers may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* at 1614–1617.

{¶33} This case is factually distinguishable from *Rodriguez*. In *Rodriguez*, the officer asked the defendant if he would allow a dog to conduct a sniff of the defendant's vehicle. Although Rodriguez refused, the officer still held Rodriguez until a canine unit arrived for a dog to conduct a sniff of the vehicle. Here, Trooper Kuehne, who was a K-9 handler and had his dog with him, decided to conduct a canine sniff of the vehicle before receiving the information he had requested regarding the driver and passenger, and before he had even begun to issue either a verbal or written warning or citation. Thus, the tasks associated with the initial stop of the

vehicle had not been completed and the stop had not been concluded. Further, when Trooper Kuehne advised Appellant of his plan to conduct a canine sniff, Appellant said "Go right ahead." Thus, even though Trooper Kuehne did not require consent to walk his canine around the vehicle, Appellant consented. Based upon these facts, and considering the totality of the circumstances, there is no indication Trooper Kuehne was not being diligent in the management of time during the stop, or that the canine sniff unlawfully prolonged or extended the duration of the stop.

{¶34} Further, with respect to the actual canine sniff that was conducted, the record reveals that the K-9 indicated on the vehicle in the area of the driver's side door. As a result of the positive indication by the K-9, the troopers proceeded to search the vehicle, which ultimately led to the discovery of approximately 500 oxycodone pills and 200 hydrocodone pills concealed in the passenger side kick panel, as well as a Mapquest printout containing directions from Appellant's residence to 1601 High Street, Portsmouth, Ohio. This Court has noted that once a trained drug dog alerts to the odor of drugs, police have probable cause to search the entire vehicle for drugs and may continue to search even if the passenger compartment contains no drugs. *State v. Baum*, 4th Dist. Ross No. 99CA2489, 2000 WL 126678, *3; citing *State v. Calhoun*, 9th Dist. Lorain No. 94CA5824, 1995

WL 255929 (May 3, 1995); *see also State v. White, supra,* at ¶ 23 (internal citations omitted) and *State v. Gurley, supra,* at ¶ 28. Thus, the K-9's positive indication on the vehicle provided the troopers with probable cause to search the vehicle.

{¶35} However, Appellant also challenges the training of the K-9 that conducted the sniff of the vehicle, arguing that there were no records introduced regarding the canine's accuracy. Appellant further argues that because the K-9 was not trained to detect the smell of the drugs that were actually found, which were pills, that the canine's indication on the vehicle was a false positive. Appellant also suggests Trooper Kuehne struck the vehicle with his hand to induce the dog to indicate on the vehicle.

{¶36} The record before us reveals that Trooper Kuehne provided testimony at the suppression hearing regarding the K-9's training and certification. He testified that the K-9, Rocky, underwent 5-6 weeks of training on narcotics detection and criminal apprehension and that the K-9 obtained certification. He explained that the K-9 was trained to detect marijuana, heroin, cocaine, methamphetamine and crack cocaine, but was not trained to be able to detect pharmaceutical pills, which is what was actually recovered from Appellant's vehicle. In *White, supra,* at ¶ 26, the court noted that " '[p]roof of the fact that a drug dog is properly trained and

certified is the only evidence material to a determination that a particular dog is reliable.' " quoting *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 55 (6th Dist.) The *White* court further noted that "proof that a dog is properly trained and certified may be established by means of testimony or through documentary proof." *Id.* at ¶ 27 (accepting the testimony of the trooper/canine handler as the requisite testimony regarding the training he and his dog completed and their certification for drug detection.).

{¶37} We are persuaded by the reasoning in *White* and conclude Trooper's Kuehne's testimony regarding the training both he and Rocky underwent and the certification they obtained in drug detection sufficiently established the reliability of the dog in this case. Further, we reject Appellant's argument that because Rocky was not trained to detect the smell of pharmaceutical pills that his indication on the vehicle constituted a false positive. In *State v. Knight*, 83 Ohio Misc.2d 79, 679 N.E.2d 758 (1997), the court reasoned that the mere fact that the dog alerted to a package that did not contain substances to which the dog was trained to alert was irrelevant. Further, in *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, the court explained as follows when discussing the problems with relying on a dog's field performance:

"If the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances there [sic] were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person. Field data thus may markedly overstate a dog's real false positives."

We agree with the foregoing reasoning and conclude that Trooper's Kuehne's testimony sufficiently established the training, certification and reliability of the K-9 and that the fact he was not trained to indicate on pharmaceutical pills, but nevertheless indicated on the vehicle, is not a reason to doubt his reliability or conclude that his indication was a false positive.

{¶38} Finally, Appellant suggests that Trooper Kuehne improperly touched the vehicle and, thus, induced the dog to indicate on the vehicle. When questioned whether he actually struck the vehicle, Trooper Kuehne testified during the suppression hearing that he performed a "tap-back," which he explained involved him waving his hand across an area of the vehicle to "present" the area to the canine to sniff. He explained that he was taught to do this as a way of presenting an area of the vehicle to the dog when the dog's attention needed to be drawn back to the vehicle or when the handler believed a dog had missed a certain area of the vehicle when performing the sniff.

{¶39} "Handler cues are conscious or unconscious signals given from the handler that can lead a detection dog to where the handler thinks drugs are located." *State v. Nguyen, supra,* at FN. 109; citing *United States v. $80,760.00 in U.S. Currency* (N.D.Tex.1991), 781 F.Supp. 462, 478, fn. 36. The trial court heard the testimony of both Appellant and Trooper Kuehne during the suppression hearing on whether Trooper Kuehne actually touched the vehicle in some manner prior to the dog indicating and apparently accepted Trooper Kuehne's testimony as being the most credible. This was a factual and credibility determination properly within the province of the trial court in ruling on the motion to suppress. We further note that from a reviewing standpoint, the placement of the trooper's hand prior to the dog's indication is not visible on the video. As such, the trial court was in the best position to hear the testimony and we defer to the trial court on this factual determination. We reject this argument as well.

{¶40} In light of the foregoing, and based upon the totality of the circumstances, we conclude that the initial stop, detention, canine sniff and subsequent search of the vehicle were lawful and thus constitutionally valid. As such, we reject the arguments raised by Appellant related to the initial stop, detention, canine sniff and vehicle search.

## MIRANDA WARNINGS

{¶41} In addition to challenging the stop, detention, canine sniff and search of her vehicle, Appellant argues that she was not provided with *Miranda* warnings and that the statements she made to law enforcement during the course of the traffic stop should have been suppressed. Based upon the following, we agree with Appellant that statements made to Trooper Lewis after the drugs were located but before she arrived at the patrol post were properly suppressed as obtained in violation of her constitutional rights. However, as will be discussed below, we reject the argument as it relates to other statements Appellant made during different timeframes of her traffic stop and subsequent arrest.

{¶42} "In *Miranda,* * * * the United States Supreme Court held that statements made during custodial interrogation, i.e. 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,' are admissible only upon a showing that law enforcement officials followed certain procedural safeguards to secure the accused's Fifth Amendment privilege against self incrimination." (Emphasis sic.) *State v. Phillips*, 4th Dist. Highland No. 11CA11, 2011-Ohio-6773, ¶ 9; quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 986 S.Ct. 1602 (1966). Those safeguards

include informing the defendant that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*.

{¶43} Police are not required to administer *Miranda* warnings to everyone they question. *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 19; citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711 (1977). "[T]he requirement that police officers administer *Miranda* warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 24. In other words, "*Miranda* rights only attach when both custody and interrogation coincide." *State v. Tellington*, 9th Dist. Summit No. 22187, 2005-Ohio-470, ¶ 8; citing *State v. Wiles*, 59 Ohio St.3d 71, 83, 571 N.E.2d 97 (1991). "Moreover, 'an individual has a right to counsel only when he is in custodial interrogation, as a suspect, or once adversary proceedings have commenced and he becomes a defendant. *See, e.g., Davis v. United States*, 512 U.S. 452, 456–457, 114 S.Ct. 2350 (1994). The person can only invoke that right during those times.' " *State v. Guysinger*, 4th Dist.

Ross No. 11CA3251, 2012-Ohio-4169, ¶ 12; quoting *State v. Adams*, 11th Dist. Trumbull No. 2003–T–0064, 2005-Ohio-348, ¶ 43.

**{¶44}** "[A]n individual has been placed into custody [if] * * *, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.' " *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995); quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980). "The 'term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083 ¶ 18; quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980).

**{¶45}** The determination of whether a suspect is in custody presents a mixed question of fact and law. *In re R.H.*, 2nd Dist. Montgomery No. 22352, 2008-Ohio-773, ¶ 15. "We defer to the court's findings of fact, when articulated, but evaluate de novo whether on those facts, [the suspect] was in custody." *Id.* A motorist temporarily detained as the subject of an ordinary traffic stop is not "in custody" for purposes of *Miranda*. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 13; citing *Berkemer v.*

*McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138 (1984). However, if the motorist "thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id*.; quoting *Berkemer* at 440. "The 'only relevant inquiry' in determining whether a person is in custody is 'how a reasonable man in the suspect's position would have understood his situation.' " *Id*. at ¶ 14; quoting *Berkemer* at 442.

{¶46} We conclude that the first category of statements made by Appellant, which were made during her initial detention stemming from her lawful traffic stop, were not statements made while in custody. As such, her statements that she was simply sightseeing, heading to Kentucky to see cousins, going to Cincinnati to shop and then returning to Michigan the same day were admissible despite the fact that they were made without the benefit of *Miranda* warnings. Because Appellant was not in custody at the time these statements were made, there was no trigger for providing *Miranda* warnings and thus, there was no error with respect to their admission into evidence.

{¶47} The next category of statements made by Appellant consists of statements made voluntarily by Appellant to her passenger while they were both in the police cruiser and while the troopers were searching the vehicle.

We note that "[a] suspect who volunteers information without being asked any questions is not subject to a custodial interrogation and is not entitled to *Miranda* warnings." *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 19; citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997). In other words, "*Miranda* does not affect the admissibility of '[v]olunteered statements of any kind.' " *Id*.; citing *Miranda* at 478. When a defendant initiates communication, "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial." *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880(1981). Because the statements Appellant made during the search of her vehicle, which were recorded on the cruiser cam, were voluntary and not in response to any type of police questioning or interrogation, we find no error associated with their admission into evidence at trial.

{¶48} The third category of statements involves the statements made by Appellant to Trooper Lewis after the search of the vehicle yielded narcotics but before Appellant was *Mirandized*. These statements were the subject of the second suppression hearing and were properly ordered suppressed by the trial court. We affirm the trial court's decision with respect to the suppression of these statements.

{¶49}  The fourth category of statements consists of statements made by Appellant at the patrol post after she was *Mirandized* by Trooper Kuehne. To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds), citing *Miranda*. However, contrary to the second prong in *Edwards*, the Supreme Court recently held that the prosecution "does not need to show that a waiver of *Miranda* rights was express.  An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 130 S.Ct. 2250, 2261 (2010) (Citation omitted). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2262.  That is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.*

{¶50} Appellant contends that because the questions asked of her at the patrol post were a continuation of a line of questioning that began in the cruiser with Trooper Lewis, statements which were properly suppressed, that any statements given post-*Miranda* should also be suppressed as fruit of the poisonous tree. We disagree. The statements at issue involve Appellant's admissions to law enforcement during questioning at the patrol post that she was bringing the drugs to "a fein named Rock" who lived on High Street in Portsmouth, Ohio, in exchange for $13,000.

{¶51} The record before us indicates that Appellant testified at the first suppression hearing that she was never, at any point, provided with *Miranda* warnings. However, the record further reflects that at the second suppression hearing, Trooper Kuehne testified that he did not question Appellant until he took her to the patrol post, and that he only questioned her after he *Mirandized* her. As already discussed, the trial court ordered that statements made by Appellant in response to questioning by Trooper Lewis after the search, but prior to arriving at the patrol post, be suppressed. However, the trial court found, at the second suppression hearing, that a *Miranda* warning was provided by Trooper Kuehne at the patrol post and that statements made thereafter were admissible.

{¶52} In *State v. Osman*, 4th Dist. Athens No. 09CA36, 2011-Ohio-4626, this Court rejected an argument that statements given before the police provided *Miranda* warnings tainted subsequent statements made after receiving *Miranda* warnings. In reaching our conclusion, we relied upon the reasoning of the United States Supreme Court in *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285 (1985), which considered the question of whether a defendant could waive his *Miranda* rights if the defendant had previously responded to uncoercive questions prior to receiving *Miranda* warnings. In *Osman,* we quoted *Oregan v. Elstad* as follows:

> "* * * the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing 'taint' to subsequent statements obtained pursuant to a voluntary and knowing *Miranda* waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.*

{¶53} Despite Appellant's testimony at the first suppression hearing that she was never warned, and her re-argument at the second suppression that she was never warned, the trial court found otherwise based upon the testimony of Trooper Kuehne. We defer to the trial court's factual findings on this issue. Further, based upon the foregoing case law, we cannot conclude that the trial court erred in refusing to suppress Appellant's

statements made at the patrol post, which were made, as found by the trial court, after Trooper Kuehne had provided Appellant with a *Miranda* warning.

{¶54} Finally, Appellant argues that she was erroneously advised at both suppression hearings of her rights under the Fifth Amendment and waiver thereof by testifying, which prejudiced her in that she was prevented from testifying that she was never Mirandized at the suppression stage. The record reveals the following testimony during the first suppression hearing at the point in which Appellant was called to testify:

> "Mr. Tieman [the prosecutor]: Your Honor, I think it may be necessary to advise her of her Fifth Amendment Rights considering this case may go to trial and anything she says could be used against her.
>
> The Court: Ma'am do you understand that?
>
> Defendant: Yes, sir."

Appellant thereafter went on to testify at the first suppression regarding her version of the traffic stop as well as her claim that she never received *Miranda* warnings, nor signed a waiver of her *Miranda* rights. On cross-examination, when asked whether she was, in fact, transporting drugs into Scioto County, Appellant pleaded the Fifth Amendment. Thus, the record reflects Appellant was permitted to testify that she was not provided with *Miranda* warnings.

{¶55} The record further reveals the following testimony at the second suppression hearing at the point in which Appellant was called to testify:

> "Mr. Tieman:  Your Honor, could we clarify for the record though, that once she takes the stand she's waived her Fifth Amendment Right to remain silent. [sic]
>
> The Court:  Absolutely.
>
> Mr. Tieman:  All right.
>
> Mr. Loesch [Appellant's counsel]:  You understand that?  But I have to question you about whether or not you received Miranda rights.
>
> The Court:  You can't choose what you testify to, Mr. Loesch. Once you take the stand everything's open.
>
> Mr. Loesch:  After a discussion with my client, she says that she'd elect not to take the stand, so I'd concur."

Thus, it appears from the foregoing that although the warning did prevent Appellant from testifying regarding the fact that she did not receive *Miranda* warnings at the second suppression hearing, she had already testified on that issue at the first hearing.  As such, we find any error to be harmless as the testimony Appellant alleges she was prevented from providing had already been given and would have merely been duplicative.

{¶56} Further, with respect to whether such a warning should have been given at all, we note that "when a defendant testifies at a pretrial

suppression hearing, those statements cannot be used to prove the

defendant's guilt." *State v. Riddle*, 12th Dist. Brown No. CA97-05-012, 1998

WL 161384, *3 (Apr. 6, 1998); citing *Simmons v. United States*, 390 U.S.

377, 88 S.Ct. 967 (1968). As explained in *Riddle*, "the reasoning is a

defendant should not have to risk exercising his constitutional rights by

testifying in a suppression hearing at the risk of incriminating himself." *Id*;

citing *Simmons* at 394. However, the *Riddle* court ultimately held, relying

on the reasoning of other jurisdictions, that "impeachment of a defendant

with sworn testimony from a suppression hearing is constitutionally

permissible." *Id*. at *4; citing *People v. Douglas*, 66 Cal.App.3d 998, 1005,

136 Cal.Rptr. 358, 36 (1977); *Gray v. State*, 43 Md.App. 238, 245, 403 A.2d

853 (1979); *People v. Sturgis*, 58 Ill.2d 211, 216, 317 N.E.2d 545 (1974),

certiori denied (1975), 420 U.S. 936, 95 S.Ct. 1144. In reaching its decision,

the *Riddle* court reasoned as follows:

> "Appellant was not under any physical coercion or the legal
> obligation to testify[,]" but rather "with the advice of counsel,
> chose to testify at the pretrial suppression hearing and '[h]aving
> voluntarily taken the stand, [appellant] was under an obligation
> to speak truthfully and accurately * * *.' " *Riddle* at *4.

{¶57} Considering the foregoing, we cannot conclude that the

advisement given to Appellant upon taking the witness stand at the

suppression hearings was completely erroneous. Although statements made

by Appellant during the hearing could not be used against her at a later trial to prove her guilt, they could be used to impeach her. As such, we conclude the advisement was incomplete, but not inaccurate.

## ASSIGNMENT OF ERROR II

{¶58} In her second assignment of error, Appellant contends that her due process rights were violated and that her indictment and convictions did not set forth proper elements of the crimes charged or valid statutory provisions for the crimes, which Appellant further contends requires reversal of her convictions. Appellant again sets forth multiple issues presented for review, which are as follows: 1) whether the indictment for trafficking and possession of hydrocodone was defective; 2) whether the indictment was void on the charges involving hydrocodone as setting forth violation of erroneous schedule and statutory provisions; 3) whether the erroneous verdict forms on the hydrocodone charges resulted in unlawful convictions on those charges; 4) whether the erroneous charges resulted in substantial prejudice to the defendant and resulted in convictions on four charges and sentences on two when the hydrocodone charges should have been included with the oxycodone charges; 5) whether the failure of defense counsel to object to the faulty and void indictment and verdict forms constitutes plain error; and 5) whether the failure of defense counsel to object to the faulty

and void indictment and verdict forms, along with the other failures set forth herein constitute ineffective assistance of counsel.

{¶59} Appellant briefly mentions two other alleged errors under this assignment of error as follows:

> "Additional violations of Appellant's due process rights include but are not limited to the denial of her requests for a continuance of the second suppression hearing and the trial due to her husband's stroke and the denial of her motion for an acquittal pursuant to Crim.R. 29(A)."

Pursuant to App.R. 12(A)(2), this Court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). *See Wright v. Suzuki Motor Corp.*, 4th Dist. Meigs Nos. 03CA2, 03CA3, and 03CA4, 2005-Ohio-3494, FN. 9. Appellant has failed to separately argue these arguments in accordance with App.R. 16. Though the appellate court has the option to address two or more assignments of error at once, the parties do not. *Grimes v. Grimes*, 4th Dist. Washington No. 10CA23, 975 N.E.2d 946, FN. 4. Because these alleged errors are simply mentioned and not even fully argued or developed, and there is no explanation as to how Appellant was prejudiced, we decline to address these extraneous arguments.

{¶60} On appeal, the State concedes that hydrocodone is not a Schedule III drug, but rather is a Schedule II drug. The State contends that only the schedule of the drug was misidentified and that the statutory sections included in the indictment were correct. The State further argues that because the error inured to the benefit of Appellant, she was not prejudiced as a result. A review of the indictment in relation to the pertinent statutes is necessary.[3]

{¶61} A review of the record indicates that Appellant was indicted for one count of trafficking in drugs and one count of possession of drugs, counts three and four respectively, on April 20, 2015. The indictment specified that the drug involved in both of these counts was hydrocodone, and identified the hydrocodone as a Schedule III drug in an amount equal to or exceeding five times the bulk amount but less than fifty times the bulk amount. Count three, the trafficking charge, alleged a violation of R.C. 2925.03(A)(2) and (C)(2)(d), a third degree felony. Count four, the possession charge, alleged a violation of R.C. 2925.11(A) and (C)(2)(c), a third degree felony.

{¶62} However, because hydrocodone is a Schedule II drug, rather than a Schedule III drug, Appellant should have been indicted, under count

---

[3] There have been multiple revisions to the pertinent statutes since Appellant committed the offenses at issue. Thus, we apply the versions of the statute in effect at the time the offenses herein were committed.

three trafficking in drugs, for a violation of R.C. 2925.03(A)(2) and (C)(1)(d), a second degree felony, rather than R.C. 2925.03(A)(2) and (C)(2)(d), a third degree felony. Likewise, under count four possession of drugs, Appellant should have been indicted for a violation of R.C. 2925.11(A) and (C)(1)(c), a second degree felony, rather than R.C. 2925.11(A) and (C)(2)(c), a third degree felony. Thus, an error regarding the schedule of the drug resulted in an error in the identification of the proper subsection of the statute which determines the felony level of the offense.

{¶63} " 'Article I, Section 10 of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Thus, the Ohio Constitution guarantees an accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury.' " *State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, 980 N.E.2d 1032, ¶ 12; quoting *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 14; citing *Harris v. State*, 125 Ohio St. 257, 264, 181 N.E. 104 (1932). As noted in *Jackson* at ¶ 12, "Crim.R. 7(B) provides, 'The statement [specifying the offense in an indictment] may be made in ordinary and concise language without technical averments or allegations not

essential to be proved.  The statement may be in the words of the applicable

section of the statute, provided the words of that statute charge an offense, or

in words sufficient to give the defendant notice of all the elements of the

offense with which the defendant is charged.' "

{¶64}  " 'An indictment meets constitutional requirements if it "first,

contains the elements of the offense charged and fairly informs a defendant

of the charge against which he must defend, and, second, enables him to

plead an acquittal or conviction in bar of future prosecutions for the same

offense." ' " *Jackson* at ¶ 13; quoting *State v. Childs*, 88 Ohio St.3d 558,

565, 728 N.E.2d 379 (2000); in turn quoting *Hamling v. United States*, 418

U.S. 87, 117, 94 S.Ct. 2887 (1974).  " 'Generally, the requirements of an

indictment may be met by reciting the language of the criminal statute.' "

*Jackson* at ¶ 14; quoting *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d

781 (2000); citing *State v. Murphy*, 65 Ohio St.3d 554, 583, 605 N.E.2d 884

(1992).  However, "if the indictment does not name the essential elements of

the criminal offense charged, the indictment is insufficient to charge the

defendant with that offense." *Jackson* at ¶ 14; citing *State v. Jester*, 32 Ohio

St.3d 147, 149, 512 N.E.2d 962 (1987).

{¶65}  In *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935

N.E.2d 26, ¶ 10, the Supreme Court of Ohio noted that "[t]he purpose of a

grand jury indictment has always been to give notice to the accused: '[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible.' " Quoting *Horton v. State*, 85 Ohio St. 13, 19, 96 N.E. 797 (1911). Further, it should be noted that the Court held in *Horner* that "failure to timely object to a defect in an indictment constitutes waiver of the error." *Horner* at ¶ 46; citing Crim.R. 12(C)(2) (objections to defect in indictment must be raised before trial.). Thus, "[a]ny claim of error in the indictment in such a case is limited to a plain-error review on appeal." *Id*.; citing *State v. Frazier*, 73 Ohio St.3d 323, 652 N.E.2d 1000; Crim.R. 52(B).

{¶66} Appellate courts take notice of plain error with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 78; *State v. Patterson*, 4th Dist. Washington No. 05CA16, 2006-Ohio-1902, ¶ 13. Plain error should only be noticed if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *See State v. Bundy*, 2012-Ohio-3934, 974 N.E.2d 139, ¶ 66. The Supreme Court of Ohio recently stated that appellate courts should be

conservative in their application of plain-error review, reserving notice of plain error for situations that involve more than merely theoretical prejudice to substantial rights. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30.

{¶67} Further, with regard to Appellant's argument that she received ineffective assistance of counsel as a result of her counsel's failure to object to the error in the indictment, we note that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441 (1970), fn. 14; *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008–Ohio–1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008–Ohio–968, ¶ 14.

{¶68} "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Walters*, 4th Dist. Washington Nos. 13CA33 & 13CA36, 2014–Ohio–4966, ¶ 23; quoting *Strickland* at 689. "Thus, 'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment." *Walters* at ¶ 23; citing *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62 and *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶69}  "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." *Walters* at ¶ 24; citing *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998) and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *Walters* at ¶ 24. "There are countless ways to provide effective assistance in any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." *Id.* (Citations omitted).

{¶70}  The indictment at issue herein charged Appellant with possession and trafficking of hydrocodone in an amount exceeding five times but less than fifty times the bulk amount.  The indictment listed the proper initial revised code sections of R.C. 2925.03(A)(2), trafficking, and R.C. 2925.03 (A), possession.  For instance, R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly do any of the following: * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or

another person." R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶71} Unfortunately, because hydrocodone was changed from a Schedule III to a Schedule II drug prior to the commission of Appellant's offenses, the State inadvertently indicted Appellant under another subsection of each statute. For instance, the determination of the schedule of the drug, as well as the amount of the drug involved determines the felony level of the offense. Nevertheless, we conclude the language of the indictment put Appellant on notice of the type of drug and the amount of drugs she was accused of possessing and trafficking. In *State v. Judy*, 4th Dist. Ross No. 08CA3013, 2008-Ohio-5551, this Court rejected an argument that the State failed to prove all the elements of the offense because it failed to prove that the substance allegedly possessed by the defendant was a controlled substance listed under Schedule II of the R.C. 3719.41. In reaching our decision, we relied upon the reasoning set forth in *State v. O'Connor*, 12th Dist. Fayette No. CA2007-01-005, 2008-Ohio-2415, ¶ 37 ("the state was not required to prove that crack cocaine, cocaine, or marijuana are controlled substances in Schedules I, II or R.C. 3719.41 because, by law, they are."). Applying the reasoning of *O'Connor*, we determined in *Judy* that "the State

presented sufficient evidence, by virtue of the BCI & I laboratory report, that the substance that formed the basis of the charge against Appellant was crack cocaine, which is, as a matter of law, a Schedule II controlled substance." *Judy* at ¶ 26.

{¶72} Recognizing that the facts presently before us are different than those in *Judy*, in that the only issue in *Judy* involved proving the elements of the offense at trial rather than charging all of the elements of the offense in the indictment, we still find the reasoning contained therein provides guidance on this issue. Because the schedule of a particular drug is, by law, what it is, and need not be expressly proven by the State, we find that although an error in the indictment related to the identification of the proper schedule of a drug is, in fact, an error, it is not an error that invalidates an otherwise valid indictment.

{¶73} Here, the indictment charged Appellant with possession of a controlled substance, hydrocodone, exceeding five times but less than fifty times the bulk amount. The State was not required to allege or prove the schedule of drug that hydrocodone is an element of the offense. The State presented expert testimony that the drugs recovered from Appellant's vehicle were positively identified as hydrocodone and that the amount tested was consistent with the amount alleged in the indictment. Further, verdict

forms indicate the jury found Appellant guilty of possession and trafficking of hydrocodone in the bulk amount as specified in the indictment. Accordingly, we cannot conclude Appellant was prejudiced by the fact that the indictment contained an incorrect subsection of the possession and trafficking statutes, an error which stemmed from an error in the identification of the correct drug schedule of hydrocodone.

{¶74} In reaching this decision, we are mindful of the Supreme Court of Ohio's recent decision in *Jackson, supra,* at syllabus, which held that "[f]or the purpose of identifying the drug involved in a drug-trafficking offense under R.C. 2925.03(A), an indictment is sufficient if it names the schedule in which the drug appears." *Jackson* involved a situation where the indictment failed to name the specific drug involved, but listed the schedule of the drug. *Id.* at ¶ 2. However, in the present case, the specific name of the drug involved was listed in the indictment and thus *Jackson* is not directly applicable. Further, we do not construe the holding in *Jackson* to require the schedule of the drug be included in the indictment when the specific name of the drug is included. To this end, we believe *Jackson* is not inconsistent with our holding in *Judy* as to the idea that the schedule of a particular drug is, by law, what it is, without resort to the State having to affirmatively allege or prove such element.

**{¶75}** Further, because the error in the present case did, in fact, inure to the benefit of Appellant in that she ended up being charged, convicted and sentenced for third degree felony offenses, rather than second degree felony offenses, Appellant has not established that she was prejudiced as a result of this error in the indictment. As such, we cannot conclude that the error rises to the level of plain error such that would require reversal of Appellant's convictions, nor can we conclude that her counsel's failure to object to the error in the indictment constitutes ineffective assistance of counsel. Specifically, with regard to Appellant's ineffective assistance of counsel argument, we indulge a strong presumption that counsel's decision not to bring the error to the court's attention was sound trial strategy as the Appellant actually benefitted from the error in that it was a lesser felony with a lesser penalty.

**{¶76}** Finally, we reject the allied offenses argument raised under this assignment of error. Appellant essentially contends that because oxycodone and hydrocodone are both Schedule II drugs with a combined amount of less than fifty times the bulk amount, her convictions for possession and trafficking of oxycodone and hydrocodone should have merged for purposes of sentencing. Appellant argues she was thus prejudiced by the prosecution of the hydrocodone offenses as Schedule III as opposed to Schedule II drugs.

{¶77} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," and this protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution. This constitutional protection prohibits multiple punishments in a single trial for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, (1969), overruled on other grounds; *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989).

{¶78} The General Assembly enacted R.C. 2941.25 to specify when multiple punishments can be imposed:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Merger is a sentencing question, and the defendant bears the burden of establishing his entitlement to the protection of R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶79} Under current Ohio law courts can only impose multiple punishments in a single trial for a defendant's conduct under two situations: 1) where the charged crimes are not allied offenses, i.e. it is not possible to commit multiple crimes with the same action, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061; and 2) the crimes are allied offenses but the defendant's actions have dissimilar import, i.e. the crimes were committed separately, or with a separate animus, or the resulting harm for each offense is separate and identifiable. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.

{¶80} Initially, we note that Appellant failed to raise an allied offenses argument at the trial court level and, as a result, this argument is also subject to a plain error analysis. We next note that we failed to find plain error or ineffective assistance of counsel regarding the error in the indictment that Appellant argues led to the imposition of multiple sentences for what she argues were allied offenses of similar import. Finally, and contrary to Appellant's argument, this Court has previously noted that the Supreme Court of Ohio "has held that the simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." *State v. Westbrook*, 4th Dist. Scioto No. 09CA3277, 2010-Ohio-2692, ¶ 42; citing *State v. Delfino*, 22 Ohio St.3d 270, 490

N.E.2d 884, at syllabus (1980). In *Westbrook* we reasoned that "[t]he legislature clearly intended that possession of different drug groups constitutes different offenses." *Id*.; citing *Delfino* at 274. Likewise, in *State v. Pitts*, 4th Dist. Scioto No. 99CA2675, 2000 WL 1678020, *11, we rejected an argument that simultaneously trafficking in two Schedule IV drugs constitutes only one offense. Consistent with our prior reasoning in both *Westbrook* and *Pitt*, we reject Appellant's argument that convictions for possession and trafficking of oxycodone and hydrocodone should merge simply because both are Schedule II drugs.

{¶81} In light of the foregoing, we find no merit to any of the arguments raised under Appellant's second assignment of error. Accordingly, it is overruled.

ASSIGNMENT OF ERROR III

{¶82} In her third assignment of error, Appellant contends that the trial court erred in sentencing her. She raises two issues under this assignment of error as follows: 1) whether the trial court abused its discretion in imposing a harsh sentence upon her when she has no criminal record; and 2) whether a court may impose a harsher sentence for reasons already covered by the legislature in setting forth the level(s) of the offenses in the statute charged. The State responds by contending that the trial court

made the necessary findings to support the consecutive sentences imposed

and that the record supports those findings.

{¶83} Appellant relies on *State v. Kalish*, 120 Ohio St.3d 23, 2008–

Ohio–4912, 896 N.E.2d 124, to support her argument that the trial court

abused its discretion by imposing harsh and consecutive sentences on her, as

she had no prior criminal history of criminal conduct, worked several jobs to

take care of her elderly father and sick husband, and is an "upstanding

citizen." However, when reviewing felony sentences, we apply the standard

of review set forth in R.C. 2953.08(G)(2). *State v. Brewer*, 2014–Ohio–

1903, 11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of

appellate districts that have abandoned the *Kalish* plurality's second step

abuse-of-discretion standard of review; when the General Assembly

reenacted R.C. 2953.08(G)(2), it expressly stated '[t]he appellate court's

standard of review is not whether the sentencing court abused its

discretion"); *see also State v. Graham*, 4th Dist. Highland No. 13CA11,

2014–Ohio–3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court

may increase, reduce, modify, or vacate and remand a challenged felony

sentence if the court clearly and convincingly finds either that "the record

does not support the sentencing court's findings" under the specified

statutory provisions or "the sentence is otherwise contrary to law."

**{¶84}** Here, it appears that sentences Appellant received on counts

one and three were within the statutory range for each offense, thus it cannot

be said that the length of either sentence is contrary to law.  Further, with

respect to the trial court's decision to order the sentences be served

consecutively, under the tripartite procedure set forth in R.C. 2929.14(C)(4)

for imposing consecutive sentences, the trial court had to find that (1)

consecutive sentences are necessary to protect the public from future crime

or to punish the offender; (2) consecutive sentences are not disproportionate

to the seriousness of the offender's conduct and to the danger the offender

poses to the public; and (3) that one of three circumstances specified in the

statute applies. *See generally State v. Baker*, 4th Dist. Athens No. 13CA18,

2014–Ohio–1967, ¶ 35–36.  The trial court is required to make these

findings at the sentencing hearing and to incorporate its findings in its

sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16

N.E.3d 659, syllabus.  "The trial court need not use talismanic words to

comply with R.C. 2929.14(C)(4), but it must be clear from the record that

the trial court actually made the required findings." *State v. Campbell*, 4th

Dist. Adams No. 13CA969, 2014–Ohio–3860, at ¶ 25.

**{¶85}** Although the trial court must make the required findings before

imposing consecutive sentences, the court is under no obligation to make

specific findings under the various factors in these statutes. *See State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015–Ohio–3703, ¶ 47.  Nor did the trial court have any obligation under R.C. 2929.14(C)(4) to state reasons to support its findings to impose consecutive sentences. *Bonnell* at syllabus ("In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings").

{¶86}  We reject Appellant's assertion that consecutive sentences were unwarranted.  Here, the trial court's judgment entry stated that it had considered the principles and purposes of sentencing under R.C. 2929.11(A)(B) and (C), had considered and balanced the seriousness and recidivism factors under R.C. 2929.12(B)-(E) and had found a presumption in favor of prison.  The trial court further expressly found 1) that consecutive sentences were necessary to protect the public from future crime or to punish the offender; 2) that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) that at least two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more multiple offenses so committed was so great or unusual that no single prison

term for any of the offenses committed as part of any of the course of conduct adequately reflects the seriousness of the offender's conduct. Thus, the required findings were made by the trial court before imposing consecutive sentences and further, the trial court was under no obligation to state its reasons for making its findings.

{¶87} In *State v. Campbell*, 4th Dist. Adams No. 15CA1012, 2016-Ohio-415, ¶ 15, we noted that courts have upheld the imposition of consecutive sentences that even included a life sentence as long as the trial court makes the required findings. Citing *State v. Peak*, 8th Dist. Cuyahoga No. 102850, 2015-Ohio-4702, ¶ 8-14 (affirming the imposition of two consecutive life sentences with the possibility of parole after ten years on each of the two counts for rape of a victim less than thirteen years old.). In light of that reasoning, we held that Campbell had "failed to establish that the trial court clearly and convincingly imposed a sentence that was either not supported by the record or otherwise contrary to law." *Id.* at ¶16. The same reasoning applies herein and leads to the same result.

{¶88} Here, Appellant was found guilty of four felony drug offenses that involved the possession and trafficking of approximately 500 oxycodone pills and approximately 200 hydrocodone pills into Scioto County for distribution. The trial court considered all of the pertinent

statutes, balanced all of the pertinent factors and made all of the necessary findings before imposing consecutive sentences. As such, we cannot conclude that the imposition of consecutive sentences was contrary to law or unsupported by the record. Accordingly, Appellant's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

{¶89} In her fourth and final assignment of error, Appellant contends that the trial court erred in refusing to grant a new trial based upon jury misconduct. Appellant presents only one issue for review under this assignment of error, which questions whether the conduct of the jurors and the trial court require a new trial. The State concedes that juror misconduct occurred when two jurors looked up the definition of the word "aggravated" on their cell phones and read the definition to the other jurors. However, the State argues that because each juror testified that he or she did not rely on the information looked up on the cell phone in reaching their decision, Appellant was not prejudiced.

{¶90} Crim.R. 33(A) provides: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (2) Misconduct of the jury * * *." The decision to grant or deny a motion for a new trial rests within the trial court's sound

discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 1140, paragraph one of the syllabus (1990). Accordingly, we will not reverse the trial court's denial of Appellant's motion absent an abuse of discretion. *Id.* An "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 450 N.E.2d 1140 (1983); *Booth v. Booth*, 44 Ohio St.3d 142, 144 541 N.E.2d 1028 (1989).

{¶91} This Court has previously held that an inquiry into alleged juror misconduct requires a two-pronged analysis. *State v. Coleman*, 4th Dist. Scioto No. 05CA3037, 2006-Ohio-3200, ¶ 10; citing *State v. Taylor*, 73 Ohio App.3d 827, 833, 598 N.E.2d 818 (4th Dist.1991), motion for leave to appeal overruled (1991), 62 Ohio St.3d 1453; *see also State v. Marshall*, 4th Dist. Lawrence No. 06CA23, 2007-Ohio-6298, ¶ 57. First the trial court must determine whether misconduct occurred. *Id.* Then, if juror misconduct is found, the court must determine whether the misconduct materially affected the appellant's substantial rights. *Id.* " 'Trial courts are given broad discretion when dealing with allegations of juror misconduct.' " *Marshall* at ¶ 57 (internal citations omitted). "Thus, its decision when faced with such allegations must be reviewed for an abuse of discretion." *Id.*

**{¶92}** In *State v. Fowler*, 2nd Dist. Clark No. 2015-CA-95, 2016-Ohio-5867, it was noted that " 'independent inquiry by a juror about the evidence or the law violates the juror's duty to limit his considerations to the evidence, arguments, and law presented in open court, and such activity is juror misconduct.' " Further, "if juror misconduct in the form of an independent investigation is discovered, the trial court is 'required to inquire of that particular juror to determine whether he or she remained impartial after the independent investigation.' " *Fowler* at ¶ 9. Additionally, as noted in *Fowler* at ¶ 9, " '[i]t is well-established that "the party complaining about juror misconduct must establish prejudice." ' " (noting that the requirement of prejudice is reflected in Crim.R. 33(A)(2); citing *State v. King*, 6th Dist. Lucas No. L-08-1126, 2010-Ohio-290, ¶ 23; quoting *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 42.

**{¶93}** In response to Appellant's motion for a new trial based upon alleged juror misconduct, the trial court conducted a hearing to determine if misconduct had, in fact, occurred.[4] The trial court controlled the hearing by questioning each juror separately about their knowledge and involvement regarding looking up definitions of words on the internet via the use of a cell phone during deliberations. The trial court also permitted counsel to

---

[4] Because not all jurors appeared for the first hearing a second hearing was also held to question the remaining jurors.

question each juror as well. The testimony obtained at the hearing established that two jurors did look up the definition of the word "aggravated" during deliberations and read the definition to the other jurors. However, the testimony also indicated that the jury sent a question to the court asking for that definition as well. Several jurors testified that the definition provided by the court was the same as the one provided on the internet. Some jurors testified that in the response to their request for a definition the court also stated that the definition did not matter for their purposes. All jurors unanimously testified that they did not rely on the online definition of the word "aggravated" in their deliberations and that the information did not sway their decision.

{¶94} Based upon the juror testimony during the hearings, the trial court concluded that that no prejudice occurred as a result of the conduct of the jurors and denied Appellant's motion for a new trial. On appeal, the State concedes that the juror conduct at issue constitutes juror misconduct and we agree. The State further contends, however, that because no prejudice occurred as a result of the misconduct, the trial court did not err or abuse its discretion in denying Appellant's motion for a new trial. We agree with the State on this argument as well.

{¶95} In *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, the Court was presented with a scenario that involved a jury who requested a definition of the word "perverse" from the trial court that was not provided, which led a juror to look up the definition of the word "perverse" on her home computer during the course of trial. The juror's note regarding the definition was intercepted by the bailiff before the juror could share the information with the other jurors. *Id.* at ¶ 8. The trial court subsequently granted a motion for a mistrial upon the request of the State. *Id.* at ¶ 15. Upon appeal thereafter, although it was determined such action constituted juror misconduct, it was also determined that the trial court erred by declaring a mistrial without making a determination that any bias had been introduced into the jury room as a result. *Id.* at ¶ 36. Here, it seems to have been accepted that the jurors' conduct of looking up definitions on the internet during deliberations constituted juror misconduct, and again, the State concedes as much on appeal.

{¶96} During the hearings that were held, the trial court went to great lengths to question each juror individually in an attempt to discern whether or not they relied upon the internet definitions in making their decisions. It is clear from the record that each juror unanimously stated they did not. Under these circumstances, we cannot conclude Appellant has established

she was prejudiced by the juror misconduct. Further, the particular type of juror misconduct at issue herein, looking up definitions of legal terms on the internet, has been determined by another court not to be extremely or inherently prejudicial, in the absence of evidence the jurors involved were biased or prejudiced by the information obtained through the internet. *See State v. Gunnell*, 2nd Dist. Clark No. 09-CA-0013, 2010-Ohio-4415, ¶ 177-178. Thus, we cannot conclude the trial court abused its discretion in denying Appellant's motion for a new trial. Accordingly, Appellant's fourth and final assignment of error is also overruled.

{¶97} Having failed to find merit in any of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.:  Concur in Judgment Only.

For the Court,


BY:  _____
     Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**